



**FRENCHMAN VALLEY PRODUCE, INC.**
P.O. BOX 879
IMPERIAL, NEBRASKA 69033
LOCAL 308-882-4243   FAX 308-882-4915

**FVP**

September 22, 2003

Armando Perez
State Monitor Advocate
Nebraska Workforce Development.
5404 Cedar St.
Omaha NE 68106

Dear Sir,

I thank you for your recent letter and findings regarding the complaints against Frenchman Valley Produce, Inc. I feel the need to respond to the afore mentioned in order to clarify the company's stand in this matter.

The facts stated in this letter are taken from a thorough phone call journal kept since April 7, 2003 when our application for the H2-A program first began. The journal includes dates, times, names and phone numbers of both incoming and outgoing calls as well as a brief description of the conversation. April 7, 2003 began with James Holt of McGuiness, Norris, & Williams, LLP whom with Robert Haverkamp continue to do the paperwork for the H2-A program in our behalf. He was told of our intended start date of July 14, 2003.

On May 27, 2003 at 11:30 A.M., Mr. Haverkamp informed me he was going to FED EX paperwork to me for signatures and that our district office had been changed from Kansas City to Chicago

On June 2, 2003 at 10:30 A.M., I called Madhavi Bhadbhade to see if she had received the applications and she informed me that we would have to advertise the Job Order in Brownsville, Tx. I received the considerations with suggestions of two newspapers and two radio stations to do the advertising on. I began the arduous task of finding someone at the Brownsville Herald to take the responsibility for getting the ads done correctly to specs and discovered that KGBT Radio in McAllen were Spanish speaking only and that 92% of McAllen were of Spanish descent. I called Madhavi on June 4, 2003 at 10:40 A.M. with my concerns of advertising as far away as Texas, and on a Spanish only radio station. With discrimination such a big issue in the workforce, I felt the need to address "targeting" a certain workforce. Madhavi talked to Chicago and said that is where the advertising must be done. The minimum requirements for the ads cost $400 for the radio and $701.36 for the newspaper, which I felt were quite expensive for targeting a particular workforce.

FVP-00362

EXHIBIT H



**FRENCHMAN VALLEY PRODUCE, INC.**
P.O. BOX 879
IMPERIAL, NEBRASKA 69033
LOCAL 308-882-4243   FAX 308-882-4915

**FVP**



On June 10, 2003 at 10:20 A.M., Rosalinda at Texas Workforce called with questions regarding the Job Order. "Can people stay in the housing before the July 14 start date?" I responded "Yes, for a day or two. We don't have anything for them to do a month early." She asked, "Is there parking?" I responded, "Yes." "Is there housing for families?" I replied, "No". "Will employees be allowed to leave for family emergencies?" "Yes, if they kept in touch as to their return and the leave didn't become too lengthy."

McAllen Workforce called on June 13, 2003 10:15 A.M. with the names and Social Security numbers of Juan Rodriguez and Juan Rodriguez Jr.. These two individuals have paperwork enclosed with this letter even though they filled out paperwork on July 17, 2003 and stayed in the housing that night then left without telling anyone before they ever worked.

In the ninth paragraph of Page 2 of your memorandum, it is stated that I interviewed all applicants from Texas by telephone with an interpreter provided by the Texas Workforce. On each and every interview, I asked if they had read and fully understood the Job Order. In which they replied that they did. I also made a specific point of telling them that Imperial, NE was a long way from Texas and that it was very remote with only 2000 people. There were no close discount stores and in fact most stores closed at 6:00 P.M. except the convenience store. You stated that reporting times were not stated within the interview, nor do I believe it was mentioned to the applicants by the staff of the Texas Workforce Commission. I would have no idea what was mentioned by the Texas Workforce Commission. But if they understood the Job Order, which includes starting time and date, there would be no question. I was also adamant about them contacting the Lincoln Office about a start up date, because I'm always concerned about start up dates when you are dealing with a crop and Mother Nature.

Suzie (De La Llata) of the Texas Workforce called on June 20, 2003, at 1:15 P.M. with the names of Jorge Sauceda & Juana Hernandez. They both wanted the short contract and understood the Job Order, which included dates and times. Suzie translated and also asked if we supplied back brace belts. I replied that they were not provided. On June 26, 2003, at 2:15 P.M., Suzie (De La Llata) called to see how people would get from the bus stop at Ogallala, NE to Imperial. And if they could come a day or two early and stay in the housing. I replied I didn't know if Ogallala had a Taxi service or not but they were encouraged to come one to two days early to fill out employment paperwork and would be assigned housing at that time.

On July 17, 2003, at 1:10 P.M. I spoke to Suzie (De La Llata) regarding the lack of paperwork from the Texas Workforce on two individuals (Juan & Juan Rodriguez Jr.) that had checked in that morning to do their employment paperwork. She informed me

FVP-00363



**FRENCHMAN VALLEY PRODUCE, INC.**
P.O. BOX 879
IMPERIAL, NEBRASKA 69033
LOCAL 308-882-4243   FAX 308-882-4915

**FVP**



that Jorge and Juana had not left yet but were coming to Imperial. I told her they would never make it in time to start work the next A.M. I asked if they had contacted Lincoln of their intention to be at the work site on July 18, 2003. She said they had contacted her but she didn't know she was to inform anyone.

In your conclusions on Page 6, first paragraph, the complainants may not have known about the practice of arriving a day before the first day of work. As documented above, Suzie and Rosalinda were informed of the would be employees being allowed to arrive and live in the housing one to two days before the start date, as Rosalinda's clients in fact, did. Other individuals from Texas who called me direct from the beginning were also advised of this practice.

In paragraph 6, we did not begin processing applications at 9:00 A.M. We began interviewing applicants one by one with an interpreter when needed. These individuals, not knowing whether they had a job or not depending on the arrival of Texas people given the jobs, were asked to be here at 9:00. They in fact were here at 6:30 A.M. July 18, 2003. The times of their interviews were written on the back of their application as well as special job interests, understanding of work and Job Order, contract wanted, past produce experience, etc. The applications are kept in their personal file. The times listed ranged from 9:00 A.M. through 11:15 A.M. Actual employment paperwork was not started until all interviews were completed. Applicants were called in three at a time to begin filling out paperwork at 11:20. The payroll secretary would then call the Social Security Administration to verify a match. That is also documented on each individual's employment paperwork. At that time, an employee number and timecard were issued. This procedure went on until 1:20 P.M. when a meeting was conducted about the Job Order, attendance, absenteeism, safety, and work expectations. Two men were hired at 1:30 P.M. and missed the initial meeting. Actual work began at 1:45 P.M. July 18, 2003.

In reference to the recommendations on Page 7.
1. urged to arrive at the job site the night before the first day of work.
   I believe that was stated to Suzie, Rosalinda, and other individuals including Gaston Cardenas who called June 30, 2003 at 12:40 P.M.. I told him to come the 16th or 17th to fill out paperwork and move into the housing.

2. Starting date and time:
   On Job Order discussed and understood by every applicant.

3. Provide a name of a contact person and phone number.
   Again, it is on the Job Order and highlighted on the attached paperwork given to the applicants by Rosalinda of the Texas Workforce. It is apparent that the phone number was made available to many as my phone journal shows:

FVP-00364



**FRENCHMAN VALLEY PRODUCE, INC.**
P.O. BOX 879
IMPERIAL, NEBRASKA 69033
LOCAL 308-882-4243   FAX 308-882-4915

**FVP**



*May Basket*

June 16, 2003 10:40 Mr. Gonzalez called to say Job Service in Brownsville told him he wouldn't be interested in this job.
3:15 P.M. Carlos Garza called regarding where the closest bus depot to us would be.
June 20, 2003, 1:35 P.M., A man from McAllen called to see which Job Service he could get information from.
June 25, 2003, 2:25 P.M. Gaston Cardenas called to see how far Imperial was from Ogallala.
June 30, 2003, 12:40 P.M. Gaston Cardenas called to check on apartment size, air conditioning, color T.V. and cable.
July 17, 2003 Santiago Vasquez called to say he was in Wisconsin and wouldn't be here
August 26, 2003, Juan ? called from 956-361-1434 saying Texas Workforce told him he could get a job here from Oct 11 through December.
September 19, 2003 11:30 Jose Dojorquez from GA wanted a job for his parents.

I feel the phone number was readily available to those who wanted it.

As far as recommending individuals be given an opportunity to remain in the area and be put on a "waiting list". At no time is anyone forbidden to stay in the area. My question is who would be responsible for finding and paying for the housing? I feel there could be many mis-interpretations of this recommendation.

I have enclosed paperwork received on employees Gaston Cardenas, Rodolfo M. Delgado, Martin G. Garza, Juan Rodriquez, and Juan Rodriquez Jr. As you will note on the first three individuals, the Workforce individual helping these three was Rosalinda Zarate. All pertinent information relating to the job was highlighted. The other two individuals arrived at the job on July 17, 2003 with no paperwork until I requested it July 17, 2003. It was received July 21, 2003, but was not as complete as Rosalinda's individuals were.

In conclusion, I feel that that Frenchman Valley Produce did everything in its power to ensure that we abide by the rules and regulations of the H2-A program and can not be held accountable for the lack of responsibility by the claimants or the Texas Workforce. In order to comply with the requirements, we have:
1. Hired Mcguiness Norris & Williams who specialize in the H2-A program to do all required paperwork.
2. Kept phone journals and intricate employee files with time offered, refused, tardiness, absenteeism, reprimands, etc.
3. Sent continual updates of hiring and departures of employees to Madhavi Bhadbhade as required. I'm sure Mahavi is to the point that she's had to build

FVP-00365

whether all H2-A employers are as thorough with their paperwork.

It is my belief after looking at all of the paperwork, that the complaints can be isolated to those dealing with Suzie (De La Llata) at the Texas Workforce. She was very pleasant to work with but may be new to the program or hasn't been trained to deal with all of the factors that can become a problem. I do not want to minimize the complexity of her employment responsibilities, as I know the paperwork can become overwhelming. Mr. Saucedo said he was advised to contact the Texas Workforce which he states he did on July 2, to inquire about a date change or his intentions of taking the job. On #12 of Form E-50, it has exactly who, when, and where to call for said information. Suzie obviously overlooked that. After calling Tom Ukinski on July 13, 2003 to find out how many individuals had called him to qualify for the first week guarantee and finding out that none had, it would have been easy to have put off the start date until July 25, 2003 to ensure the maturity of the crop. By failure of the Texas Workforce to let the Lincoln office know of prospective employees intentions to be in Imperial July 18, 2003, it could have been a costly situation. 52 workers requested on the Job Order @ 48 hours per week @ $8.53 per hour is $ 21,290.88. Not a small price to pay for someone else's mistake.

The individuals filing the complaint had more than adequate time to prepare for departure to Imperial from the date of their interview on June 20, 2003, even if it was 1200 miles. The more imposing question was whether all of the Texas Workforce Development people handing these Job Orders are trained to do so correctly. It appears that those working with Rosalinda Zarate were well informed and prepared with paperwork to fulfill their employment wishes. Unfortunately, other prospective employees weren't. I encourage the Texas Workforce to investigate this matter internally. I do not intentionally want to point a finger or accuse anyone of purposely being lax in their responsibilities, yet I do think the matter could become serious if not confronted and dealt with. Everyone should be made aware of the problem and a resolution made.

Thank you for your time with this matter. I would request that you call me with any questions regarding this information and that this letter and paperwork be shared with any individual that was associated with this investigation.

Sincerely,
Tammy May

*Tammy May*

FVP-00366