# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| Ruben Alvarez-Carillo, Jorge Sauceda, and Juana Hernandez-Vasquez | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. B-04-122 |
| v. | § | |
| | § | |
| Frenchman Valley Produce, Inc. and Tammy May, | § | JURY TRIAL REQUESTED |
| | § | |
| Defendants. | § | |

**AFFIDAVIT OF TAMMY MAY**

STATE OF <u>Nebraska</u>  §
COUNTY OF <u>Chase</u>  §

Before me, the undersigned notary, on this day personally appeared Tammy May, a person whose identity is known to me. After I administered an oath to her, upon her oath she said:

"My name is Tammy May. I am over twenty-one (21) years of age. I am fully competent and qualified in all respects to make this Affidavit. Unless otherwise noted, the facts stated herein are within my personal knowledge. All facts stated herein are true and correct.

I am employed by Frenchman Valley Produce, Inc. (hereinafter referred to as "Frenchman Valley"). My title is "Secretary" and "Treasurer." I, together with my husband, Tim May, manage the day-to-day operations of the farm. Tim May is the President of Frenchman Valley. Frenchman Valley is a small, family-run potato farm in Imperial, Nebraska. The farm has been in Tim May's family since approximately 1964. The farm incorporated in approximately 1993.

During the year 2003 we employed 118 people. This is based on the number of W-2's we submitted to the U.S. Internal Revenue Service. We have a regular business practice of keeping "personnel files" on each individual employee. Each employee has his/her own file. At the end of each fiscal year, we box up and store our old records. These old payroll records are kept in a storage facility located approximately three miles from our main office.

Page 2

Our files are maintained alphabetically by employee name. The files contain confidential and private information including: time cards, check stubs, Social Security Numbers, Driver's License Numbers, or other government identification numbers, and any Worker's Compensation Claims, reprimands, and relevant medical records.

Frenchman Valley's pay periods occur every two weeks. Each employee turns in a separate time card weekly, so therefore, there are two time-cards per employee for every pay period during which an employee worked at Frenchman Valley. Among the items contained in the files are each employee's two time cards and one check-stub for each pay period that the employee was employed at Frenchman Valley. Many of the documents in the files are stapled together.

Frenchman Valley has a small office staff. I would do any copying of these personnel files given the small size of our staff and given the sensitive and personal nature of the information contained in the personnel files.

Any information from these files that we copy would have to be copied manually and individually in our copy machine. The task would be burdensome, and any extensive copying would pose a hardship to our firm. Each copy costs Frenchman Valley $.03. The copy machine does not have a document feeder. I estimate that the closest Kinko's or other similar copy center is approximately 200 miles away. I conservatively estimate that a fair market rate for my time would be $35.00 an hour. I estimate that it would take 30 minutes to travel to and from the storage to retrieve the employee files for 2003. To search for the time period of July 14 to October 11, 2003, I would have to cross reference our payroll summaries for that time period with each individual employee that worked during that time. I estimate that this would take a minimum of 8 hours. The amount of time it will take to copy each employee's individual records will depend on how long that employee worked at Frenchman Valley because this affects how many documents would be in each file.

I performed a test on how long it would take to copy and individual employees's records for the period of July 14, 2003 to October 11, 2003. It took 35 minutes and there were 49 pages in the file that I copied. Some employees may not have worked the entire period from July 14, 2003 to October 11, 2003, and in that case, the copying time would be less. Based on the test I performed, assuming it takes 30 minutes to copy an employee's file for the time period of July 14, 2003 to October 11, 2003, for 118 employees, I estimate that it would take a minimum of 3540 minutes or a minimum of 59 hours to copy all of our employee files. After all copying is complete, I estimate that it will take approximately 30 minutes to put the employee files back in storage.

The minimum total time I estimate it will take me to complete the copying of employee personnel files for July 14, 2003 to October 11, 2003 is 68 hours.

At a rate of $35.00 an hour, this would cost $2,380.00 of my time, plus the cost of copying.

Page 3

If I were to copy the personnel files for the time period of July 14, 2003 to October 11, 2003, I would be kept from doing my other regular duties in maintaining and running the day-to-day operations of the firm. This would be a great burden to the family-business given how time consuming and costly the task would be. The eight to nine day I spent retrieving, going through, and copying employee files would pose a great hardship to the firm. I would not feel comfortable hiring someone else to do the retrieval and copying because of the confidential and private nature of the employee files."

"Further affiant sayeth not."

Name _Tammy May_
Title _Sr. / Totals_

SUBSCRIBED AND SWORN TO BEFORE ME, by the said _Tammy May_ on this the _20th_ day of _March_, 2005, to certify which witness my hand and seal of office.

Notary Public/State of _Nebraska_

3

# EXHIBIT 2

Section A. Legal Custodian

I HEREBY ATTEST, That the attached copy or copies of each document listed below is a true copy of a document in the official custody of the Department of Labor.

Copy of WHISARD Compliance Action Report, copies of narrative reports, copies of Employee Personal Interview Statements, copy of H-2A certification, copy of letter, copies of WHISARD Case Summary Reports

| ...ure and Official Title | Agency and Office | Date |
|---|---|---|
| ... Van Rengen ...tor, Regional Operations | Wage & Hour Division | March 16, 2005 |

B. Authentication Officer

I HEREBY CERTIFY, That Jules Van Rengen _____ who signed the foregoing attestation, is now and was at the time of signing (title)

Director of Regional Operations _____ and has legal custody of the official records of the United States Department of Labor therein attested and that full faith and credit should be given to his/her act as such.

IN WITNESS WHEREOF, I

DARLENE LORMAN, REGIONAL ADMINISTRATOR _____

duly designated by the Secretary of Labor as Authentication Officer of the Department of Labor, have here-unto subscribed my name and caused the seal of the Department of Labor to be affixed this 16th day of

MARCH, 2005 _____ .

Authentication Officer
Department of Labor

DL 1-128
Rev. Feb. 1986

Frenchman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

### MSPA Narrative

Frenchman Valley Produce, Inc.
P.O. Box 879
Imperial, Nebraska 69033
(308) 882-4243

### COVERAGE
Subject employers, husband and wife, Tim and Tammy May, own and operate a potato packing shed operation which encompasses approximately 32 acres plus they lease approximately 1800 acres that the potatoes are grown on███████████████ During the agricultural season of 2003 and 2004, subject employers solicited████████recruited, hired and employed seasonal and migrant agricultural workers.  Therefore, by definition, Mr. & Mrs. May are agricultural employers (AGERs) within the meaning of Section 3(2) of the Migrant and Seasonal Agricultural Worker Protection Act as Amended (MSPA).       **EXEMPTION 5**

In addition, subject employers are a housing provider (HP).  As of the date of the initial conference (IC) on September 21, 2004, there were approximately 20 people living in the employer provided housing████████████ The housing was inspected and certified by█████ ███████ of Nebraska Workforce Development McCook, NE office███████████ The employer does not house family groups, only workers████████████Therefore, by definition, all of the individuals residing in the employer provided housing are migrant workers.

Given that subject employers engaged in four of the six named MSPA activities and they are a HP, MSPA coverage is asserted for the period of time that that encompassed the 2003 agricultural season, beginning July 14, 2003 through the date of the IC.  Thus, the investigative period is from 7/14/03 through 9/21/04.

### Joint Employment
During the investigative period subject employers did not utilize the services of a farm labor contractor.  Hence, there was no joint employment.  Subject AGERs are the sole employers.

**EXEMPTION 7(C)**

*(left margin, vertical):* EXEMPTION 7(C)

Frenchman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

**EXEMPTIONS    Persons not subject to MSPA**
4(a)1   Applicable
The family business exemption is applicable during the entire investigative period because no one other than Mr. & Mrs. May performed any of the six named MSPA activities. ████████ who is the lead agricultural specialist at the National Office of U.S. Department of Labor, Wage Hour Division, participated in and concurred with this determination.

As part of this compliance action, the MSPA complaint of ████████████ and ███████ husband and wife, taken by the Texas Workforce Commission and forwarded to the U.S. Department of Labor (US DOL), Wage and Hour Division (WHD), Omaha, Nebraska (NE) Area Office (AO) was investigated. ████████ and ██████ migrated to Nebraska from Texas after speaking to ████████████ who had approached Tim May to request that he hire ████████████████████ were interviewed ██████ ███████████████████ by ███████████████ who speaks Spanish fluently. This matter was queried in the written statement of AGER, Tim May ████████████████ taken by WHI ████████ In addition, other employees of the firm were interviewed ██████████ and employer's records were reviewed and copied ████████████ as part of the fact finding process pertaining to this complaint.

**EXEMPTION 5**

EXEMPTION 7(C)

EXEMPTION 7(C)

EXEMPTION 7(C) ████man Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

Based upon a thorough analysis of all of the relevant facts, the family business exemption is not deemed to be inapplicable due to ██████████ referral of ██████████ ████████. May did not request, instruct or delegate to ██████████ to solicit or recruit ██████████.

## EXEMPTION 5

In the 2003, the AGERs participated in the H-2A program and as part of this program they were required to post the job offer nationwide with State Employment Security Agency (SESA). In addition, the AGERs have a standing implicit understanding with the local SESA, the Nebraska Workforce Development office in McCook, NE to refer workers. Per the US DOL WHD Field Operation Handbook (FOH) Chapter 57a8(d), "An employer whose activities are otherwise exempt under section 4(a)(1) does not lose the exemption by using the services of a local SESA office to obtain workers." Therefore, even though in 2003 the AGERs obtained workers from the SESA in Texas ██████████████████████ the family business exemption is still deemed to be applicable during the entire investigative period.

## EXEMPTION 5

4(a)(2)        Inapplicable.
Based on an extrapolation from Mr. May's statement ██████████████ during the 3rd calendar quarter 2003, AGERs exceeded 500 man-days. The math is as follows: 65 workers x 6 days a week x 10 weeks = 6,500 man-days. According to Mr. May, the 3rd quarter is the busiest calendar quarter and therefore that is when they employ the most employees. In 2003, they began operation of potato processing on July 18, 2003.

| | | |
|---|---|---|
| 4(a)(3)(A) | Inapplicable. | AGER is not a common carrier. |
| 4(a)(3)(B) | Inapplicable. | AGER is not a labor organization. |
| 4(a)(3)(C) | Inapplicable. | AGER is not a charitable organization. |
| 4(a)(3)(D) | Inapplicable. | AGER employed agricultural workers for more than 13 weeks. |
| 4(a)(3)(E) | Inapplicable. | AGER is not a custom combine operation. |
| 4(a)(3)(F) | Inapplicable. | AGER is not a poultry operation. |
| 4(a)(3)(G) | Inapplicable. | AGER and workers' principle occupation is agriculture. |
| 4(a)(3)(H) | Inapplicable. | AGER does not grow shade tobacco. |
| 4(a)(3)(I) | Inapplicable. | AGER is not an employee of persons described in A through H. |

4(b)        Applicable.
By definition, Mr. & Mrs. May are an AGER, and therefore Title I of the Act does not apply.

## STATUS OF COMPLIANCE
### Complaint Data
This compliance action was set-up as a directed case as part of the national recidivism survey in agriculture during fiscal year 2004. Subsequent to this case file being set up, a MSPA complaint was forwarded to the Omaha AO as discussed above. There was no specific indication as to which MSPA standard was allegedly violated. However, on Form EEO-13 completed by Texas Workforce Development Specialist ██████████ item 13 pertaining to allegations of discrimination, an "X" appears next to the words "Reprisal/Retaliation". This allegation of discrimination is unsubstantiated for it did not meet the criteria set forth in Section 505.

## EXEMPTION 7(C)

5

Frenchman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

**EXEMPTION 7(C)**

None of the individuals cited in the complaint were employees in 2004 ███████████. The employer's explanation for the reason these individuals were not hired was due to their poor work history ███████████ when they had worked for subject enterprise in 2001 and that they were aware of this reason because they had been expressly told so in 2004 ███████████ Mr. May also said that ███████████ have called in 2002 and maybe 2003 to ask if we'd hire them and Tammy (May) said no."

Given that AGERs are persons not subject to the Act, no determination of compliance was made.

AGERs are housing providers. The housing consists of two buildings, one built in 1984 and the second in 1986. Both were designed and built in accordance with US DOL OSHA specifications. The maximum occupancy for both buildings is 52 people ███████████

The housing was inspected and certified to meet all safety and health standards by ███████████ of the Nebraska Workforce Development office in McCook, NE ███████████ On 9/21/04, ███████████ and ███████████ conducted a walk-through housing inspection. No apparent housing or safety violations were observed. In addition, during the housing inspection ███████████ spoke in Spanish to the occupants and none reported any problems or concerns.

**DISPOSITION**
On October 8, 2004, a telephonic final conference (FC) was held with AGER, Tim May, and ███████████ notified Mr. May that in the 2003 and 2004 season they were deemed as persons not subject to the Act under the family business exemption. ███████████ explained to Mr. May criteria of this exemption. Mr. May conveyed that even though exempt they were in compliance with the requirements of the law (MSPA) and would continue to do so.

Recommendation ███████████

███████████

Lead Investigator
October 26, 2004

EXEMPTION 5

EXEMPTION 7(C)

EXEMPTION 7(C)

EXEMPTION 5

# EXHIBIT 3

**Agricultural and Food Processing Clearance Order**

**U.S. Department of Labor**
Employment and Training Administration



| READ CAREFULLY: In view of the statutorily established basic function of the employment service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither ETA nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the JS constitute a contractual job offer to which the ETA or a State agency is in any way a party. | OMB Approval No. 1205-0134 |
|---|---|
| | 1. Industry Code 　　　　2. Job Order Number |
| | 3. Occupational Title and Code<br>Packer, agricultural produce - 920.687-134 |

| 4. Employer's Name and Address (Number, Street, City, State, Zip Code, and Telephone Number)<br>Frenchman Valley Produce, Inc.<br>East Highway 6, P.O. Box 879, Imperial, NE 69033<br><br>(308) 882-4243 | 5. Anticipated Period of Employment |||
|---|---|---|---|
| | From: 7/14/2003 | To: 10/11/2003 ||
| | 6. Clearance Order Issue Date | Job Order Expiration Date ||

| 7. Preferred Crew Leader/Worker's Name and Address<br><br>N/A | Social Security Number<br>N/A | Leader's Functions | Yes | No | 8. No. .Type of Workers Requested |
|---|---|---|---|---|---|
| | | Supervises | ☐ | ☐ | Total Number __ 20 ____ |
| | Telephone Number<br>N/A | Transports | ☐ | ☐ | No. Individual __ 20 ____ |
| | | Pays | ☐ | ☐ | No. Family __ 0 ____ |
| | | Assumes OASI | ☐ | ☐ | |

**9. Wage Rates, Special Pay Information and Deductions**

| Crop Activity | Flat Rate (i.e. hr. wk.) | Piece Rate | Unit | Est. Hourly Rate Equiv. | C/L Wage Rate |
|---|---|---|---|---|---|
| Packing potatoes | $8.53 | | | | |
| | | | | | |
| | | | | | |

(See attachment no. __ 9 ____ )

**10. Anticipated Hrs. of Work Per Week __ 48 __**

| Normal Hours Per Day | Sun __0__ | Thu __8__ |
|---|---|---|
| | Mon __8__ | Fri __8__ |
| | Tue __8__ | Sat __8__ |
| | Wed __8__ | |

**11. Job Specifications (If additional space is needed, please use separate sheet of paper or reverse of form)**

Involved in all activities related to packing harvested potatoes. Includes removing debris, floating potatoes to conveyor lines, monitoring grading and sorting machines, weighing and packing potatoes and placing boxes on pallets.
(See attachment for complete description.)

(See attachment no. __ 11 ____ )

| 12. Location and Direction to Work Site<br>East Highway 6, P.O. Box 879<br>Imperial, NE 69033<br>(See attach. no. __ 12 ____ ) | 13. Board Arrangements<br>Cooking facilities for workers to fix meals<br><br>(See attach. no. __ 13 ____ ) ||||||
|---|---|---|---|---|---|---|
| **14. Location and Description of Housing**<br>Location is at work site.<br><br>Employer assures the availability of no cost or public housing which meets the full set of applicable standards. (See attach. no. __ 14 ____ ) | Number and Capacity of Housing Units ||||||
| | Barracks || Family Units || Single Rooms ||
| | No. | Total Cap. | No. | Total Cap. | No. | Total Cap. |
| | 4 | 52 | | | | |
| | Authorized Capacity __ 52 ____ ||||||
| **15. Referral Instructions**<br><br>(See attach. no. __ 15 ____ ) | 16. Collect Calls Accepted | | Yes | No |||
| | By Employer | | ☐ | ☑ |||
| | by Order Holding Office | | ☐ | ☐ |||
| **17. Transportation Arrangements**<br><br>(See attach. no. __ 17 ____ ) | 18. Distribution of Clearance Order ||||||
| **19. Address of Order Holding Office (Including Telephone Number)**<br>Nebraska Workforce Development<br>550 S. 16th St., Box 94600, Lincoln, NE 68509-4600<br>(402) 471-2693 | 20. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. ||||||
| | Signature ||||||
| **Name of Agency Representative (Including Telephone Number)**<br>Madri Bhadi (402) 471-2693 | Title<br>President ||||||

Replaces Form MA 7-90 which is obsolete

ETA 790 (R. Jan 1981)

FVP-00011

## Frenchman Valley Produce, Inc.

## ATTACHMENTS TO ETA-790 – AGRICULTURAL AND FOOD PROCESSING CLEARANCE ORDER

### Packer, Agricultural Produce

The employer agrees to abide by the assurances required at 20 CFR Part 655, Subpart B, including the regulations at 20 CFR 655.103 and 20 CFR 653.501. This Clearance Order describes the actual terms and conditions of the employment being offered by Frenchman Valley Produce, Inc. and contains all the material terms and conditions of employment.

### Item 8. Number of Workers Requested

The employer's total seasonal workforce need is 20 full-time workers for the period of employment specified in this Clearance Order.

### Item 9. Wage Rates - Special Pay Information and Deductions

Produce packers will be paid at the applicable Adverse Effect Wage Rate for Nebraska, which, at the time this Clearance Order is filed, is $ 8.53 per hour. If, during the period of employment covered by this Clearance Order, a higher Adverse Effect Wage Rate for Nebraska is established by the U.S. Department of Labor, the employer will pay workers in this occupation such higher rate, beginning on the effective date of such higher Adverse Effect Wage Rate. If, during the period of employment covered by this Clearance Order, a lower Adverse Effect Wage Rate for Nebraska is established by the U.S. Department of Labor, the employer may, at the employer's discretion, pay a rate not less than such lower Adverse Effect Wage Rate, beginning on the effective date of such lower Adverse Effect Wage Rate.

Workers will be paid bi-weekly by check. The pay period begins on Thursday and ends on the second Wednesday following. The employer will make the following deductions: FICA (if applicable); Federal income tax withholding (if applicable); long-distance telephone charges incurred by the worker (if any); recovery of any loss to the employer due to damage (beyond normal wear and tear) or loss of equipment, housing or furnishings caused by the worker (if any); and deductions expressly authorized by the worker in writing (if any). No deductions except those required by law will be made which bring the worker's earning for any pay period below the applicable statutory Federal or state minimum wage.

The employer will furnish to the worker on each payday (the Friday after the end of the pay period) a written statement of the worker's total earnings for the pay period, the worker's hourly rate of pay, the hours of work offered to the worker (broken out by hours offered in accordance with and over and above the three-quarters guarantee), the total hours actually worked by the worker, and an itemization of all deductions made from the worker's wages.

The employer will comply with the wage provisions of 20 CFR 655.102 and 107.

FVP-00012

All employees will be covered by workers compensation insurance in accordance with Nebraska State law. This insurance provides payment of medical benefits and time loss payments when an employee is accidentally injured on the job.

Employees are provided Unemployment Insurance coverage credit in accordance with Nebraska law for agricultural employers.

**Item 10. Anticipated Hours of Work Per Week.**

The scheduled work week is 48 hours, consisting of 8 hours per day Monday through Saturday. Workers may receive less work, or be requested to work more hours in any given day, depending upon crop or weather conditions and/or market demand. Work hours available usually exceed 50 hours for two to three weeks at the end of September, however, such additional work is not guaranteed. Workers may be requested, but will not be required, to work on the worker's Sabbath and/or on Federal holidays.

This is regular, full time work requiring the worker to be available for work on a daily basis as needed. This is not "day work". Excessive tardiness and/or absences will not be tolerated and will result in disciplinary action.

The work day normally begins at 7:00 a.m., but may begin earlier or later on any given day. Workers will be instructed the previous evening if there is any change in the starting time. Workers are normally provided with a 10 minute break in the morning and afternoon, and an unpaid one hour lunch break.

The employer will provide United States workers referred through this Clearance Order with 48 hours of work for the week beginning with the anticipated date of employment set forth in Item 5, unless the employer amends the date of need in accordance with 20 CFR §653.501(d) (2) (v). The employer may require the worker to perform alternative work if this guarantee is invoked and the work described in this Clearance Order is not available. Alternative work will include any available field work, general farm labor and farm maintenance activities, including mending, repair, maintenance or preparation of fences, housing and other farm buildings, and equipment. If a worker referred on this Clearance Order fails to notify the order-holding office of continued interest in the job between 9 and 5 working days before the date of need, the worker will be disqualified from above assurance.

The employer guarantees to offer the worker employment for at least three-quarters of the workdays of the period of employment set forth in Item 5, and all extensions thereof, beginning with the first workday the worker is at the employer's farm and is ready, willing, able and eligible to work, and ending on the expiration date shown in Item 5 or any extension thereof. For the purposes of this guarantee a workday shall mean 8 hours Monday through Saturday and shall exclude the worker's Sabbath and Federal holidays. The worker may, however, be offered more hours of work than listed above, and may be offered work on the worker's Sabbath and on Federal holidays.

FVP-00013

-2-

If the employer fails to provide the worker with the amount of work required under this guarantee, the employer will pay the worker the amount the worker would have earned had the worker worked for the guaranteed number of workdays. In determining whether the period of guaranteed employment has been met, the employer will count all hours of work actually performed (including hours over 8 in a day voluntarily worked and hours voluntarily worked on the worker's Sabbath and on Federal holidays), and any hours which the worker fails to work, up to a maximum of 8 hours on Monday through Saturday when the worker has been offered an opportunity to work.

If the worker voluntarily abandons employment before or is terminated for cause before the ending date of employment set forth in Item No. 5, the worker will forfeit the guarantee set forth above.

If, before the ending date of the period of employment set forth in Item 5, the services of the worker are no longer required for reasons beyond the control of the employer due to fire, hurricane, adverse crop conditions or other Act of God which makes the fulfillment of the anticipated period of employment impossible, the employer may terminate the worker's employment. In the event of such termination, the employer will fulfill the above guarantee for the period that has elapsed from the first workday the worker is at the employer's farm and is ready, willing, able and eligible to work, until the date employment is terminated. In such cases the employer will make efforts to transfer the worker to other comparable employment acceptable to the worker. If such transfer is not effected, the employer will offer to return the worker at the employer's expense, to the place from which the worker, disregarding intervening employment, came to work for the employer.

**Item 11. Job Specifications.**

Workers perform any of the following tasks involved in packing harvested potatoes: Sit or stand at conveyor belts on harvesting machine in field or at cleaning station at packing house observing potatoes and removing plant debris, stones and other foreign material and cull or damaged potatoes as potatoes move along conveyor, according to specifications of the supervisor. Clean debris from area around conveyors. Inside the storage shed, use low pressure hoses to float cooled potatoes into packing area, moving cooling equipment and adjusting flume as necessary to assure even flow of potatoes. Sit or stand at conveyor feeding potatoes from flume into grading and sorting equipment for further removal of foreign matter and cull potatoes. Sit or stand at conveyor to monitor potatoes according to grade, color, and size and discard culls and any remaining foreign matter. Check that packages have required weight and add or subtract produce to obtain specified weight. Pack specified number of smaller bags into approximately 50 lb units. Operate in pairs to stack 100 lb bags of potatoes onto pallets in such a way that pallet is stable. Clean up potatoes and debris from around work area as necessary during the work day and at the end of the work day.

Daily individual and/or crew work assignments will be made by and at the sole discretion of the employer as the needs of the packing operation dictates. Workers must perform the assigned work, and may not switch work assignments without the specific authorization of the designated supervisor. Workers may be assigned to a variety of tasks in any given day and/or to

FVP-00014

different tasks on different days. Workers are rotated among activities to relieve boredom, avoid potential repetitive motion problems and increase efficiency. Workers will be expected to perform any and all of the listed tasks, as assigned by the worker's designated supervisor, for at least two hour intervals.

Qualifications: Must be able to work outdoors in dusty and dirty conditions, in extremes of heat and cold, and in inclement weather. Must be able to stand for entire day with limited breaks as described in item 10. Must be able to lift and carry loads of up to 50 pounds for short distances. Must be able to understand and follow simple instructions of supervisors. No prior experience is required.

Employer will comply with all worker protection standards and re-entry restrictions applicable to pesticides and other chemicals used in fields.

Frenchman Valley Produce, Inc. has established a reputation for shipping quality produce. This is a very demanding and competitive business in which quality specifications must be rigorously adhered to. Sloppy work can not and will not be tolerated.

Instructions and general supervision will be provided by a designated lead worker or company supervisor. Workers will be expected to perform their general duties in a timely and proficient manner without close supervision.

The employer may discipline the worker, including requiring the worker to leave the field or shed ("time out") for a period determined by the supervisor, suspension from employment, or termination of employment as described in the Frenchman Valley Produce, Inc Worker Rules.

Workers must not report for work, enter the work site or perform service while under the influence of or having used alcohol or any illegal controlled substance. The possession or use of illegal drugs or alcohol on Company property will be cause for termination. Workers must not report for work, or perform services, while under the influence of, or impaired by, prescription drugs, medications or other substances that may in any way adversely affect their alertness, coordination, reaction response or safety.

All tools and equipment necessary to perform required tasks will be provided by the employer at no cost to the worker. Workers will be charged for willful damage or loss to such tools or equipment.

**Item 12. Location and Directions to Work Site.**

Frenchman Valley Produce, Inc. is located outside Imperial, Nebraska. From the junction of highways 6 and 61 in downtown Imperial, take U.S. Highway 6 east for ¼ mile. The major work location is at the company headquarters and nearby fields. The address for company headquarters is: East Hwy 6, PO Box 879, Imperial, NE 69033

FVP-00015

**Item 13.  Board Arrangements.**

The employer will provide kitchen facilities for workers occupying employer-provided housing to prepare their own meals. Employer will make available, at no cost to the worker, transportation to and from a grocery store at least once each week.

**Item 14.  Location and Description of Housing.**

Housing is located within 100 yards of the company headquarters, ¼ mile east of Imperial, Nebraska on Highway 6.

The employer will provide housing and bedding at no cost to workers who are not reasonably able to return to their usual place of residence each day.  Housing will be provided to workers only.  No housing for nonworkers is available.  Workers will be assigned to housing by the employer or a designee, and must occupy the quarters assigned to them unless a change is authorized by the employer.  Workers recruited under this Job Order from within normal commuting distance will not be provided with housing.

Women workers will be provided with sleeping facilities shared with other female workers and segregated toilet facilities.   Dining and other common areas may be shared among all workers.

No tenancy in employer provided housing is created by this arrangement.  The employer retains possession and control of the housing premises at all times.  Workers provided housing under the terms of this clearance order shall vacate the housing promptly upon termination of employment with Frenchman Valley Produce, Inc.

Housing will be clean and in compliance with applicable standards or local rental housing standards when made available for occupancy.  Workers occupying employer-provided housing will be responsible for maintaining the housing and their living areas in a neat, clean manner and for compliance with the employer's "Labor Camp Rules and Regulations" which will be provided upon assignment to housing.  Failure to comply with these rules will result in disciplinary action as described in the Worker Rules.  Reasonable repair costs of damage other than that caused by normal wear and tear will be deducted from the earnings of workers found to have been responsible for willful or negligent damage to housing or furnishings.

Workers entitled to housing may choose not to occupy housing provided by the employer by signing  a form declining that housing. The worker retains their right to no cost housing if they change their mind.

Mail intended for workers occupying employer-provided housing should be addressed to the worker in care of Frenchman Valley Produce, Inc.

In case of emergency only, workers occupying employer-provided housing may be contacted by calling (308)882-4243 during normal business hours or (308)882-4652 after office hours.

FVP-00016

Housing is barracks style with two buildings which each contain 2 units with sleeping, living, eating, washing and toilet facilities. Cooking facilities are provided in each of the four units for workers to prepare their own meals.

**Item 15. Referral Instructions.**

Referrals will be accepted from local Job Service offices only. All applicants should be thoroughly familiarized with the job specifications and terms and conditions of employment before a referral is made. Only workers meeting all the qualifications for employment and who are able, willing and qualified to perform the work, who are eligible for employment in the United States, and who will be available at the time and place needed, should be referred to Frenchman Valley Produce, Inc., telephone 308-882-4243.

*Note*

Documentation of identity and employment authorization sufficient to complete an I-9 Form as required by the Immigration Reform and Control Act must be in the possession of the worker at the time the worker reports for work, and will be examined by the employer as a condition for completing the hiring process. Referring local offices should fully apprise workers of this requirement and how to fulfill it, and help to assure that workers referred on this order are legally entitled to work in the United States and possess the necessary documents to complete an 1-9 Form.

**Item 16. Collect Telephone calls.**

Collect telephone calls will be accepted by the employer at the telephone number listed in Item No. 15 from Job Service placement personnel of applicant holding offices only Monday through Friday from 8:00 a.m. to 5:00 p.m. Collect telephone calls will not be accepted from individual applicants. Applicants should be thoroughly screened as requested in Item No. 15 before referring officials place collect telephone calls.

*Note*

**Item 17. Transportation Arrangement.**

For workers who complete 50 percent of the work period, the employer will reimburse the worker for costs incurred by the worker for transportation and reasonable subsistence from the place from which the worker came to work for the employer to the place of employment. Subsistence will be $12 per day without documentation, and in accordance with the current Federal Register notice for workers with receipts. The amount of the reimbursement for transportation shall be the worker's actual cost, but no more than the most economical and reasonable similar common carrier transportation charges for the distance involved. If the worker completes the period of employment, the employer will provide or pay for the worker's transportation and reasonable subsistence from the place of employment to the place from which the worker came to work for the employer.

For the purposes of the above reimbursement, the "period of employment" shall be the period from the first workday the worker is at the employer's farm and is ready, willing, able and eligible to work until the anticipated ending date of employment set forth in Item #5.

Reimbursement of inbound and return transportation costs applies only to persons recruited from outside normal commuting distance.

Return transportation will not be provided to workers who voluntarily abandon employment before the end of the employment period or who are terminated for cause.

The employer will provide transportation at no cost to the worker from the employer provided housing to the worksite and return on a daily basis. Such transportation will be in accordance with applicable laws and regulations. The use of this transportation is voluntary; no worker will be required as a condition of employment to utilize the transportation offered by the employer.

If a sufficient number of able, willing, qualified and eligible workers are available in a single locality at the same time to come to work for the employer, the employer will arrange bus transportation at the most economical rate attainable for such workers. However, workers will be responsible for paying the cost of such in-bound transportation and subsistence, if applicable.

**Item 19. Workers Questions**

Workers who have questions about this order may call the telephone number listed for the order holding office in Item 19 of this Clearance Order.

FVP-00018

# EXHIBIT 4



**LAW OFFICE OF**
# TEXAS RIOGRANDE LEGAL AID, INC.
**WESLACO**
**300 SOUTH TEXAS BLVD**
**WESLACO, TX 78596**
**TELEPHONE (956) 968-6574 TOLL FREE (800) 369-0574**
**FAX (956) 968-8523**

<u>Via Fax and CM/RRR</u>

January 11, 2005

Harvey Ferguson, Jr.
Gonzalez Hoblit Ferguson, L.L.P.          *CM/RRR#: 7002 2030 0005 5830 1606*
Frost Bank Plaza
802 N. Carancahua, Suite 2000
Corpus Christi, Texas 78470
Via Fax: (210) 226-1544

    Re:   Alvarez-Carillo et al. v Frenchman Valley Produce, Inc. and Tammy May

Dear Mr. Ferguson:

    Thank you for providing your responses and objections to Plaintiffs' first sets of interrogatories, request for admissions, and requests for production of documents. I have reviewed the answer and your responses to discovery and I am writing to see if we can resolve several problems I have with them.

    I believe that a number of your responses are evasive and/or incomplete, and many of your objections are improper. As such, I would like you to clarify and supplement your responses. If we cannot resolve the concerns raised in this letter, I intend to present our dispute to the Court so that the Court can consider our respective positions.

    Before addressing specific requests, there are a number of initial matters that I would like to address. These matters pertain to many, if not all, of the responses provided by your client.

    First, you have raised as a "general objection" to each of my discovery requests that Defendant Frenchman Valley Produce is exempt from the AWPA by virtue of its status as a "family owned business." Simply raising this exemption as an issue in your responses to discovery does not remove Plaintiffs' AWPA claims from the prescribed scope of permissible discovery. Defendant, if it wishes to claim the exemption, bears the burden of demonstrating that it "plainly and unmistakably" falls within the terms and the spirit of the exemption. See <u>Charles v. Burton</u>, 857 F.Supp. 1574 (M.D. Ga. 1994); <u>Aviles v Kunkle</u>, 765 F.Supp. 358 (S.D.Tex. 1991), rev'd on other grounds. At this point in the lawsuit, Defendant cannot rely on the exemption to limit Plaintiffs' discovery. Not only has Defendant not yet met its burden of proving the exemption applies, it has not even properly pleaded the exemption.

    Second, you routinely respond to my requests with lists of repetitive objections without specifically stating how each objection raised relates to the discovery request. There are numerous requests to which your client objected based on relevancy, (See Frenchman Valley Produce's Responses to Interrogatory Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 19,

October 4, 2004
Page 2 of 9

20, 21, and 22, Requests for Admissions Nos. 17, 18, 19, 20, 21, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, and 37, and Request for Production Nos. 1, 2, 3, 4, 5, 7, 8, 9, 14, 15, 16, 18, 19, 20, 21, 22, 23, and 24, and Tammy May's Responses to Interrogatory Nos. 2, 4, 6, 7, 9, 11, 15, and 16, Requests for Admissions Nos. 17, 18, 19, 20, 21, and 22, and Requests for Production Nos. 1, 2, 3, 4, 5, 7, 8, 9, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24), and numerous requests to which you objected on the ground that the requests were vague, overbroad, unduly burdensome, and/or an impermissible fishing expedition (See Frenchman Valley Produce's Responses to Interrogatory Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, and 21, and Requests for Production Nos. 1, 2, 3, 4, 5, 7, 8, 10, 14, 15, 16, 18, 19, 20, 21, 23, and 24, and Tammy May's Responses to Interrogatory Nos. 1, 2, 4, 6, 7, 9, 10, 11, 12, 13, and 14 and Requests for Production Nos. 1, 2, 3, 4, 5, 7, 8, 10, 14, 15, 16, 17, 19, 20, 21, 22, 23, and 24). Simply invoking a litany of stock phrases is insufficient. See Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D.Pa. 1980). Rather, you must show specifically how the interrogatory or request is, for instance, overly broad or unduly burdensome, or how it is irrelevant. "General objections without specific support may result in waiver of the objections." Id. 85 F.R.D. at 297. See also Puricelli v. Borough of Morrisville, 136 F.R.D. 393, 396 (E.D. Pa. 1991).

Third, your object to a large number of Requests and Interrogatories on the ground that the information sought is irrelevant to any issue in this suit. While it is true that the information sought must be "relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b)(1), the definition of what is "relevant" is far broader than your responses would indicate. Indeed, as described in the Commentary to Rule Changes, a "variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type ... could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389. Courts have recognized that even after the recent amendments to Rule 26, the scope of relevant information remains very broad: "While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer. Such a restrictive approach would run counter to the underlying purpose of the rule changes, as explained by the commentary, run afoul of Fed. R. Civ. P. 1, and undoubtedly do disservice to the requirement of notice pleading in Rule 8..." Thompson v. HUD, 199 F.R.D. 168, 172 (D.Md. 2001).

Fourth, there are a number of requests to which you objected and then failed to provide a response. Simply making an objection does not itself excuse your client from providing an answer—Fed.R.Civ.P. 33(a) requires that a party "furnish such information as is available to the party." "That one may object to interrogatories as being excessively burdensome is not an excuse for responding with nothing but objections or a motion for a protective order. Counsel must promptly furnish such information responsive to the interrogatories as is available through reasonable efforts." Martin v. Brown, 151 F.R.D. 580, 594 (W.D. Pa. 1993).

Fifth, you have objected to several discovery requests as "premature" (See Frenchman Valley Produce's Responses to Interrogatory Nos. 1, 2, and 14 and to Requests for Production Nos. 5, 6, 11, 12, and 13, and Tammy May's Responses to Interrogatory Nos.

October 4, 2004
Page 3 of 9

1 and 2 and Requests for Production Nos. 5, 6, 11, 12, and 13). This is not a proper objection. Please remove this objection and respond to the discovery requests.

What follows are more specific concerns with respect to your responses.

<u>Responses to Requests for Admissions</u>

In your responses to Plaintiffs' First set of Requests for Admission to Defendant Frenchman Valley Produce, you objected to 19 of 50 Requests on the ground of relevancy. In your responses to Plaintiffs' First Set of Requests for Admission to Defendant Tammy May, you objected to 6 of 36 Requests on the same ground. For the reasons stated above, I believe the majority of your blanket objections are invalid, but I will reserve my responses to your objections on those responses that appear to be sufficient until a later date.

I would like to specifically address both Defendants' responses to Requests 17 through 22. Each of these requests asks for information regarding Defendants' compliance in 1999 with Department of Labor regulations, and the Department of Labor's investigation into claims regarding Defendants' alleged failure to comply. You objected on the ground that those requests are "utterly irrelevant to any issues in this suit," "not calculated to lead to the discovery of admissible evidence," and are "intended designed [sic] solely to harass Defendant." Plaintiffs seek full statutory damages for the AWPA violations alleged, and Defendant's past failure to comply and involvement with DOL investigations regarding compliance are relevant to the amount of damages Plaintiffs are entitled to recover in this case. The statutory damage award in AWPA cases is intended not only to compensate injured Plaintiffs but also to promote future compliance with the AWPA by deterring violations. In setting the amount of statutory damages to be awarded in this case, the Court is entitled to look to such factors as Defendants' past record and history of violations as well as to the extent of Defendants' knowledge of the law and/or applicable labor regulations he/she is said to have violated. The information sought is therefore relevant.

<u>To Frenchman Valley Produce</u>:

Requests 25 through 37 seek information regarding Defendants' employment of foreign H-2A workers during the time period relevant to this suit. Defendants have asserted that they have at all relevant times complied with industry, federal, and state laws, standards and regulations. As an employer of foreign H-2A workers, Defendant subjects itself to a host of labor regulations, one of which prohibits an employer from providing preferential treatment to alien over foreign workers. Defendants' compliance is at issue and Plaintiffs seek relevant and discoverable information regarding that compliance. The information sought is relevant to Plaintiffs' claim that Plaintiffs were denied employment for reasons other than that asserted by Defendants, namely that they did not show up for work on time.

You have objected to Requests 37 and 38 on the ground that the requests are vague and unclear, and that they fail to provide a definition for the occupational title identified. This term is listed by Frenchman Valley Produce on its Agricultural and Food Processing Clearance Order, job order number NE05422425. Because Frenchman Valley requested

October 4, 2004
Page 5 of 9

testimony at trial.  Please enlighten me.  In the event that a response may do this, it is not counter to the Federal Rules and you still must answer.

What follows are my responses to your objections to particular Interrogatories.

To Frenchman Valley Produce:

Interrogatory No. 1: Your response to this interrogatory states, "relevant documents include but are not necessarily limited to the following." I presume then that your relevancy objection does not apply to the documents you list. Your response implies that there are other documents to which the relevancy objection similarly does not apply, and as such, I would ask that you list and describe them.

Interrogatory No. 4: Your response is incomplete. This interrogatory asks that Defendant describe its procedure for securing agricultural and/or packing house workers; it is not limited to H-2A workers, nor is it limited to the 2003 season. Defendants have raised the family business exemption as a possible defense, putting both Defendants' recruitment activities in Texas during the 2003 season and before directly at issue. Further, as agricultural employers, Defendants' obligations under the AWPA will turn in large part on the extent to which they were involved in the recruitment of workers. As such, I would ask that you please explain in your answer what procedures were used to secure both H-2A and non-H-2A agricultural workers in the years 2000 through 2003, including whether or not farm labor contractors were used, and if so, how they were found, who they were, and what was provided to them to assist them with recruiting.

Interrogatory No. 8: This interrogatory asks you to identify agricultural and/or packing house workers who worked for Defendant in 2003. Whatever putative privacy interest these individuals have in the information requested is outweighed by its relevance to this lawsuit. Plaintiffs contend that defendant breached the terms of the working arrangement by refusing to employ them.  The information sought is not private and is relevant because other 2003 employees are potential witnesses. The fact that this information is needed to identify potential witnesses is a sufficient reason in itself to require its production.  See Gaydos v. Packard-Hughes Interconnect, 1998 U.S. Dist. LEXIS 14025 (S.D.Ala. 1998) (in individual employment suit, ordering employer to produce identifying information of nonparty co-workers because they may be potential witnesses).  This interrogatory further asks for the date and location of recruitment for each worker who worked for you in 2003. This information is relevant because you have raised the family business exemption, putting your recruitment activities during 2003 directly at issue.

Interrogatory No. 10: This interrogatory asks for a description of the type of housing that was available at or near the job site during the 2003 season. Plaintiffs have claimed in this lawsuit that Defendant breached the working arrangement it had entered into with Plaintiffs by failing to provide the promised terms and conditions of employment, one of which was that housing would be provided to those workers not reasonably able to return to their places of residence. Housing was part of the offer of employment that was made to Plaintiffs, thus a description of that housing is relevant to Plaintiffs' breach of contract and breach of the working arrangement claims.

Jan-11-05    11:12am    From-TX.RioGrande Legal Aid, Inc.    +9569688828    T-220    P.007/010    F-322

October 4, 2004
Page 6 of 9

Interrogatory No. 11: This interrogatory asks for information about workers who were living in housing owned or controlled by Defendant in 2003. This information is relevant because these individuals 2003 are potential witnesses who may have information about what housing was available in 2003 and why housing and/or work was denied to Plaintiffs.

Interrogatory No. 15: In responding to this interrogatory, you object to the use of the term "positive recruitment." Please explain why you feel this term is inapplicable here. It is my understanding that as part of your application for alien agricultural labor certification in 2003, you were required to include in your job offer a statement agreeing to abide by the conditions set out in 20 C.F.R. 655.103, one of which requires that you engage in "positive recruitment" of U.S. workers. This interrogatory seeks further information about actions you were required to undertake as part of the application process.

Interrogatory No. 20: This interrogatory asks you to identify each person who worked for Frenchman Valley Produce from June 2000 to November 2003. In response, you refer to Interrogatory No. 8. Your answer to that Interrogatory is also incomplete. Again, this information is relevant because these employees have knowledge of Defendant's employment practices, and as such are potential witnesses. Further, as explained above, Defendant's past practices are relevant to damages calculations under the AWPA.

<u>To Tammy May</u>:

Tammy May's responses and objections to Interrogatory Nos. 1 and 4 appear to be the same as Frenchman Valley's responses. As such, please refer to the preceding paragraphs regarding those two Interrogatories for my responses.

Interrogatory No. 15: This interrogatory asks you to identify each person you recruited or solicited for employment with Frenchman Valley Produce in 2003, and asks for additional specific information regarding such recruitment or solicitation. Your response talks about recruitment activities undertaken in Texas, but does not mention efforts elsewhere. Please provide information regarding the recruitment and/or solicitation of the workers named in the payroll journal produced other than the five you identify who came from Texas. As explained above, this information is relevant because you have raised the family business exemption, putting your recruitment activities in 2003 directly at issue.

<u>Responses to Requests for Production</u>

In your responses to Plaintiffs' First Set of Requests for Production to Defendant Frenchman Valley Produce, you objected to 18 of 24 Requests on the ground of relevancy, and to 17 of 24 Requests on the ground that they were overbroad, unduly burdensome, and constitute fishing expeditions. In your responses to Plaintiffs' First Set of Requests for Production to Defendant Tammy May, you objected to 18 of 24 Requests on the ground of relevancy and to 18 of 24 Requests on the ground that they were overbroad, unduly burdensome, and constitute fishing expeditions. For the reasons stated above, I believe the majority of your blanket objections are invalid, but I will reserve my responses to your objections on those responses that appear to be complete until a later date.

Jan-11-05   11:12am   From-TX.RioGrande Legal Aid, Inc.          +9569688823          T-220  P.008/010  F-322

October 4, 2004
Page 7 of 9

Moreover, after interposing general objections as described above in your response to RFP No. 1, you then provide certain specified documents in response without either (1) stating that the documents provided are the only documents in your possession in response to the request or (2) specifying documents or types of documents that you are withholding or for which you are refusing to search, based upon your objections. This type of response prevents Plaintiffs and the Court from knowing if you retain responsive documents and violates your obligation under Rule 34(b) to specify that part of the request to which an objection is maintained, where some documents are provided for inspection. This type of ambiguous response appears in Frenchman Valley Produce's Responses to Requests 2, 3, 4, 5, 6, 7, 8, 10, 16, 19, 23, and 24 and in Tammy May's Responses to Requests 2, 3, 5, 6, 7, 8, 10, 16, 20, and 23.

Please supplement your responses to each of these RFPs by either stating, as you did in Frenchman Valley Produce's response to RFP No. 18, "No other responsive documents are in the possession of this Defendant at this time," or identifying the documents or types of documents being withheld. Plaintiffs will then be in a position to decide whether further discussion or a motion to compel is appropriate.

To Frenchman Valley Produce:

RFP No. 7: This requests seeks "employment records" and "personnel files of Plaintiffs." Your response states only that no "personnel files" exist, but does not state whether any other "employment records" are in your clients' custody and control. Please clarify.

RFP No. 8: This request seeks all payroll records for workers employed by Defendants from June 2003 to January 2004 showing, inter alia, hours and days worked and the basis on which wages were paid to all such workers. You have provided only payroll totals for each worker for the pay period ending July 24, 2003 and the entire period from July 10 to October 11, 2003.

The principal issue in this case is whether you had justification for refusing to hire plaintiffs on the day their work was to begin. You claim that the entire 52 person crew had already been hired and was working by the time plaintiffs arrived late on July 18, 2004, and that this was the reason you refused to put them to work as promised. Plaintiffs are entitled to discovery to test your clients' defense. Documents showing who was working on July 18, 2003 and the critical days before and after that date, along with the amount of work available for these workers at that time, is reasonably calculated to lead to admissible evidence. As stated above, Plaintiffs are also entitled to know the names and addresses of potential witnesses concerning the work being provided and the hiring procedures on or around July 18, 2003.

RFP No. 14: This request asks Frenchman Valley Produce to produce a copy of all work agreements entered into between Frenchman Valley Produce and any worker employed by or furnished to Frenchman Valley Produce in 2003. In response, you produced paperwork completed by the individuals who had interviewed with Rosalinda Zarate at the Texas

Jan-11-05   11:12am   From-TX.RioGrande Legal Aid, Inc.                +9569688823        T-220   P.009/010   F-322

October 4, 2004
Page 8 of 9

Workforce Commission who were subsequently hired by Frenchman Valley Produce. You have failed to produce the agreements for any other workers. As stated above, who and how many people were working, when they were engaged, and when they began work is an issue critical to the defense raised by Defendants. Plaintiffs are entitled to these documents for the potential information contained therein and to locate and speak with and/or depose potential witnesses as to the work provided and the hiring procedures for this harvest.

RFP No. 15:  This request seeks documents reflecting the need for workers during the 2003 harvest on daily, weekly and monthly bases. You have produced some totals in response to RFP No. 8 and records of pre-harvest projections made to U.S.DOL. As discussed above, daily and hourly records of hours worked and numbers of workers employed, especially during the early stages of the harvest in late July and August 2003, are discoverable.

RFP No. 18:  This requests asks that Frenchman Valley Produce produce all documents relating to any investigation of your operations for violations of employment related laws in 2001, 2002, 2003, and 2004. Requesting documents relating to *any* investigation does not reflect an "improper presumption" that violations of the law occurred in those years; the request simply asks that *if* any investigations have in fact taken place, you produce documents relating thereto. I refer you to Frenchman Valley Produce's response to Interrogatory No. 6, which states that an investigation was conducted in 2001 by the Department of Labor Nebraska Workforce Development in 2001. Please produce all documents relating to this investigation.

RFP No. 20:  This request directly seeks documents showing the identity of workers in the 2003 potato harvest. As stated above, plaintiffs may discover these identities to interview them as potential witnesses. In addition, Plaintiffs are entitled to the identities of the foreign H-2A guestworkers to learn when they began working and to discover who recruited them for employment, inasmuch as Defendants claim the family farm exemption from AWPA coverage, requiring that all recruitment was done by members of the May family.

RFP No. 21:  This request seeks all documents showing the amount of work performed for the Defendants by each worker it employed in the 2003 potato harvest. You have provided two summaries, neither of which shows for each worker daily starting times, daily hours, or weekly hours. As discussed above, this is important, discoverable information.

To Tammy May:

Tammy May's responses and objections to Requests 7, 8, 14, and 15 appear to be the same as Frenchman Valley's responses to Requests 7, 8, 14, and 15. As such, please refer to the preceding paragraphs regarding those Requests for my responses. Tammy May's responses to Requests 19, 21, and 22 appear to be the same as Frenchman Valley Produce's responses to Requests 18, 20, and 21, respectively. Please refer to the preceding paragraphs regarding Requests 18, 20, and 21 for my responses.

Jan-11-05   11:13am   From-TX.RioGrande Legal Aid, Inc.         +8569688823         T-220   P.010/010   F-322

October 4, 2004
Page 9 of 9

RFP 8: This request asks that Tammy May produce all payroll records that she made, obtained, or kept concerning any worker from June 2003 to January 2004. Your response refers to a payroll journal produced in response to Plaintiffs' Requests for Production to Defendant Frenchman Valley Produce, which contains hourly wage records from June 10th, 2003 through December 31st, 2003 and payroll summaries from July 10th, 2004 through October 11th, 2003. Please confirm that no responsive documents were made, obtained, or kept by Tammy May individually, apart from those records kept by Frenchman Valley Produce.

Please amend your answer and your responses the Plaintiffs' discovery requests in light of the deficiencies outlined above within fifteen days. If you do not provide amended responses or an explanation of why your responses are accurate and complete, I will assume that you are not willing to discuss this matter further and I will seek guidance from the Court.

Sincerely,

TEXAS RIOGRANDE LEGAL AID, INC.

Jennifer Smith
Attorney for Plaintiffs