UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 6 2005

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| Ruben Alvarez-Carillo, Jorge Sauceda, and Juana Hernandez-Vasquez | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. B-04-122 |
| v. | § § | |
| Frenchman Valley Produce, Inc. and Tammy May, | § § § | JURY TRIAL REQUESTED |
| Defendants. | § § | |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COME** Defendants Frenchman Valley Produce, Inc. (hereinafter "Frenchman Valley") and Tammy May, (hereinafter collectively referred to as "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and file their Motion for Partial Summary Judgment, and in support thereof would respectfully show unto the Court as follows:

### I.

Defendants would show the Court that, with respect to Plaintiffs' Migrant and Seasonal Agricultural Workers Protection Act claims, there is no genuine issue as to any material fact upon which liability can be predicated in this matter and that they are entitled to judgment as a matter of law.

### II.

In support of Defendants' Motion for Summary Judgment, Defendants have attached hereto and incorporate herein for any and all purposes as though set forth verbatim the following exhibits:

| | | |
|---|---|---|
| Exhibit "1" | - | Affidavit of Tammy May, dated April 27, 2005 |
| Exhibit "2" | - | Affidavit of Tammy May, dated March 24, 2005 |
| Exhibit "3" | - | U.S. Department of Labor's Investigative Report |
| Exhibit "4" | - | U.S. Department of Labor's Job Clearance Order |

Affidavits are a proper summary judgment proof. FRCP 56(e). Furthermore, with respect to the applicability of The Migrant and Season Agricultural Protection Act of 1983, 29 U.S.C.A. §§1801 et seq, Tammy May's affidavits are corroborated by the Department U.S. Department of Labor's Investigative Report.

### III.

### BACKGROUND

Frenchman Valley is a small, family-run potato farm in Imperial, Nebraska. Exhibit 2 (Affidavit of Tammy May, which is attached hereto and incorporated by reference as if fully set forth herein). Tammy May is Frenchman Valley's Secretary and Treasurer, and Tim May is Frenchman Valley's President. *Id.* The farm has been in Tim May's family since 1984. *Id.* It is undisputed that Tammy and Tim May are the sole owners of Frenchman Valley.

Plaintiffs are migrant agricultural workers. Plaintiffs' Original Complaint § 3.2. In their Original Complaint, Plaintiffs generally assert that Plaintiffs applied for potato packaging positions at Frenchman Valley. In connection with said potential employment, Plaintiffs generally asserted two causes of action against Defendants: (1) that Defendants violated The Migrant and Seasonal Agricultural Workers Protection Act of 1983, 29 U.S.C.A. §§ 1801 et seq. (hereinafter referred to as "AWPA") and (2) that Defendants entered into and breached a contract with Plaintiffs. Defendants will only address Plaintiffs' AWPA claims in this Motion. Defendants dispute the existence of any contract and, alternatively, deny any fault or breach of any contract. Plaintiffs' AWPA claims are the subject of this motion.

The AWPA is designed "to assure necessary protections for migrant and seasonal agricultural workers." 29 U.S.C. § 1801. The AWPA imposes requirements on labor contractors, agricultural employers, and agricultural associations related to the terms of employment and requires certain disclosures. However, family farmers who meet certain criteria are exempt from the statute. The AWPA provides:

> (a) The following persons are not subject to this chapter--
> (1) Family business exemption.--Any individual who engages in a farm labor contracting activity on behalf of a farm ... which is owned or operated exclusively by such individual or an immediate family member of such individual, if such activities are performed only for such operation and exclusively by such individual or an immediate family member, but without regard to whether such individual has incorporated or otherwise organized for business purposes.

29 U.S.C. § 1803(a)(1). Defendants submit that they are exempt from the requirements of the AWPA, and have asserted the affirmative defense of exemption from the AWPA under the Family Business Exemption, 29 U.S.C.A. § 1803(a)(1), hereinafter referred to as the "Family Business Exemption."[1] The term "farm labor contracting activity," as it is used in the Family Business Exemption, is defined as one of six types of acts: "recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker." 29 U.S.C. § 1802(6). With respect to farm labor contracting activities, Plaintiffs have only plead that Defendants recruited, solicited and hired migrant agricultural workers. Plaintiff's Original Complaint §4.1. Consequently, only these farm labor contracting activities are addressed herein.

---

[1] Plaintiffs filed a Motion to Compel against Defendants on March 7, 2005. Defendants responded and requested the Court to consider Defendants' Motion for Summary Judgment on Plaintiffs' AWPA claims *before* ruling on Plaintiffs' Motion to Compel. As authority for this, Defendants cited "the reasonable needs of the action," as discussed in the Advisory Committee's Notes to the 2000 Amendment to Rule 26(b), and the wide discretion that the Court is given over controlling discovery considering the interests of justice and the convenience of the parties. *See* Fed. R. Civ. Pro. 26(d).

Believing they were exempt from the AWPA, Defendants sent a Freedom of Information Request to the U.S. Department of Labor Wage and Hour Division. The U.S. Department of Labor (hereinafter referred to as the "DOL") investigated Plaintiffs' complaints with respect to Frenchman Valley. In an investigative report, dated January 5, 2005, the DOL found that Frenchman Valley did not violate any AWPA regulations, and furthermore found that **Frenchman Valley is a family-owned business, qualifies for the Family Business Exemption, and is therefore exempt from the AWPA by virtue of the Family Business Exemption.** A true and correct copy of the DOL's letter is attached hereto as Exhibit 3 and is incorporated by reference as if fully set forth herein. The DOL stated

> **The [F]amily [B]usiness [E]xemption is applicable** during [7/14/03 through 9/21/04] because no one other than Mr. & Mrs. May performed any of the six named AWPA activities[2]" (emphasis added).

## IV.

## ARGUMENT AND AUTHORITIES

Summary Judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Cartett*, 477 U.S. 317, 322, 106 S.Ct 2548, 2552 (1986) ("...[R]ule 56(c) mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") A party asserting an affirmative defense "must establish beyond peradventure *all* of the essential elements of the...defense to warrant judgment in his favor." *Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1990, 1194 (5th Cir. 1986)).

---

[2] As discussed *infra* herein, Plaintiffs only pleaded that Defendants engaged in the recruiting, soliciting, and hiring or workers. *See* Plaintiffs' Original Petition §4.1.

In considering the affirmative defense of the Family Business Exemption, Courts have undertaken a two-step analysis. Initially, the Court must determine the labor contracting activities involved in the farm's operation. *Flores v. Rios*, 36 F.3d 507, 510 (6th Cir 1994). Then, "the court must ascertain whether these labor contracting activities were performed exclusively by members of the farmer's family." *Id.*

Defendants maintain that the weeks preceding July 14, 2003 through October 11, 2003 are the relevant time periods for determining the applicability of the Family Business Exemption and accordingly, address these dates in their Motion. This is because, according to the DOL's job clearance orders authorizing Frenchman Valley to employ migrant workers, the period of employment Plaintiffs applied for was from July 14, 2003 to October 11, 2003. A true and correct copy of the DOL's Job Clearance Order is attached hereto and is incorporates by reference as if fully set forth herein as Exhibit 4.

### A. FARM LABOR CONTRACTING ACTIVITIES INVOLVED

As discussed above, Frenchman Valley is a small, family owned and run farm. Exhibit 2. The farm labor contracting activities involved in running Frenchman Valley's operations include the recruiting, soliciting, and hiring of agricultural workers. *See* Plaintiffs' Original Petition §4.1; *See* Exhibit 1. Therefore, these are the three activities Defendants focus on these terms in this Motion.[3]

### B. TAMMY MAY AND TIM MAY EXCLUSIVELY PERFORMED ALL FARM LABOR CONTRACTING ACTIVITIES

The second step in analyzing why Defendants are entitled to Summary Judgment as to Plaintiffs' AWPA claims requires analyzing who performed all of Frenchman Valley's farm labor contracting activities. As discussed, for the Family Business Exemption to apply, only family

---

[3] In abundance of caution and to be thorough, Tammy May discusses each farm labor contracting activity in her affidavit. *See* Exhibit 1.

members of the Mays' family may perform the applicable farm labor contracting activities. And, with the exception of utilizing state workforce commissions, which Defendants address separately below, either Tammy May or Tim May performed all farm labor contracting activities. There will be no evidence to the contrary. As stated by Tammy May in her affidavit:

1. During the time period of June 1, 2003 to October 11, 2003, **either Tim or I did any and all recruiting** of potential employees of Frenchman Valley.

2. During the time period of June 1, 2003 to October 11, 2003, **either Tim or I did any and all soliciting** of potential employees of Frenchman Valley…

4. During the time period of June 1, 2003 to October 11, 2003, **either Tim or I did made all hiring decisions** for personnel at Frenchman Valley…

8. During the time period of June 1, 2003 to October 11, 2003, **neither Tim nor I delegated to anyone outside the family any authority** to recruit, solicit, hire, employ, furnish, or transport, any migrant workers.

Exhibit 1 (emphasis added).

The Family Business Exemption is construed narrowly, *Flores v. Rios*, 36 F.3d 507, 509 (6th Cir. 1994), and courts have also restrictively interpreted the terms of the exemption. For example, under the exemption, "transporting" was construed to not include casual transport of workers but instead to include serious transportation over substantial distances, *Calderon v. Witvoet*, 999 F.2d 1101, 1103 (7th Cir. 1993), and "recruiting" was construed to exclude word-of-mouth referrals from neighbors and others who knew that owner was hiring to help locate prospective farm employees, *Malacara v. Garber*, 353 F.3d 393, 399 (5th Cir. 2003). By extension, Defendants respectfully urge this court to follow this trend and restrictively interpret the farm labor contracting activities involved in Frenchman Valley's business (i.e. recruiting, soliciting, and hiring) equally restrictively so as to find Defendants eligible for the exemption. In doing so, Defendants respectfully submit that the Court will be honoring the spirit and legislative history of the AWPA which is detailed below herein.

The court's focus, in analyzing whether or not someone other than a family member performed the labor contracting activities, is on whether or not there was a *delegation of authority* to a non-family member. *Flores* at 515 (citations omitted). During the relevant time period to this action, the Mays did not delegate to anyone outside the family any authority to recruit, solicit, or hire, let alone to employ, furnish, or transport, any migrant workers. *See* 29 U.S.C. § 1803(a)(1); *see* Exhibit 1.

Admittedly, at the DOL's direction, the Mays used state workforce commissions to help connect them with potential employees. However, following the requirements of the DOL and using the Nebraska Workforce Development Commission and the Texas Workforce Development Commission, does not "spoil" the Family Business Exemption. *See Malacara v. Garber*, 353 F.3d 393, 399-400 (5th Cir. 2003) (holding that owner's use of state employment agency to locate prospective farm employees did not render him ineligible for the family business exemption under the AWPA). Similarly, the Mays did not delegate any authority to the workforce commissions so as to render the Family Business Exemption inapplicable. Tammy May confirms this in her affidavit, wherein she stated,

> During the time period of June 1, 2003 to October 11, 2003, Frenchman Valley, at the U. S. Department of Labor's direction, did use the Nebraska Workforce Development Commission and the Texas Workforce Commission to act as an intermediary in connecting Frenchman Valley and potential employees. These workforce commissions did not charge a fee. They did not purport to represent either Frenchman Valley or any of the potential employees. To my knowledge, they did not provide any worker with assurance of employment. We did not delegate any authority to these employment agencies to hire any employees on our behalf. Any job offered to potential employees was offered by either Tim or me.

Exhibit 1.

### C. PURPOSE OF AWPA AND THE FAMILY BUSINESS EXEMPTION SHOULD BE HONORED

The AWPA protects migrant workers. And, as the Sixth Circuit noted, **"[the] AWPA... protects farmers** by establishing a clear standard of acceptable conduct which minimizes the risk of 'haphazard' and 'burdensome litigation.'" *Flores v. Rios*, 36 F.3d 507, 509 (6th Cir 1994) *citing* F.R. Rep. No. 885, 97th Cong., 2d Sess. 1 (1982), reprinted in 1982 U.S.C.C.A.N. 4547, 4547 (emphasis added). The *Flores* court continues to note that the statute's legislative history explains that the AWPA "[wa]s a consensus bill enacted only after extensive negotiation between representatives of the agricultural community, organized labor, migrant groups, the Untied States Department of Labor, and the committees of jurisdiction in both Houses of Congress." *Id.*

"Apparently believing that **family farms pose little threat of worker exploitation**, Congress has exempted such operations, under certain conditions, from AWPA's regulatory scope. 29 U.S. C. § 1803(a)(1)." *Flores* at 510 (emphasis added). Frenchman Valley is a small, family-run farm. *See* Exhibit 2. The Mays and their farm represent precisely the type of small farm Congress expressly exempted from coverage of the AWPA. Congress recognized the "oft-beleaguered family farmer" and accordingly exempted them from the stringent requirements of the AWPA. *See Flores* at 510 *citing* 11 U.S.C. §§ 1201-1231 ("providing special bankruptcy protection to family farmers.")

### D. THE DEPARTMENT OF LABOR'S RULING FINDING FRENCHMAN VALLEY EXEMPT FROM THE AWPA SHOULD BE ACCORDED DEFERENCE

Defendants respectfully submit that the court should defer to the DOL's findings that, for the relevant time period for the facts giving rise to this lawsuit, Frenchman Valley was not subject to the AWPA by reason of the Family Business Exemption. *See* Exhibit 3.[4] The DOL reached this

---

[4] The DOL concurrently investigated Frenchman Valley's compliance with the Fair Labor Standards Act and found no violations. Furthermore, the DOL found that Frenchman Valley did not violate any H-2A provisions. Exhibit 3.

conclusion following a thorough investigation into Frenchman Valley's compliance with the AWPA.[5] To reach its conclusion that Frenchman Valley was not subject to the AWPA by reason of the Family Business Exemption, the DOL did the following: analyzed Frenchman Valley's prior history of compliance; analyzed the applicability of the Family Business Exemption; interviewed the Mays; analyzed the AWPA complaints of two redacted individuals who were husband and wife which were taken by the Texas Workforce Commission; and interviewed employees of the Texas Workforce Commission. *See* Exhibit 3. Further supporting the breadth and thoroughness of the DOL investigation is the DOL's statement that it based its conclusion of the applicability of the Family Business Exemption "[on] a **thorough analysis of all the relevant facts**." Exhibit 3 page "3 of 12" (emphasis added).

The standard of judicial deference to administrative rulings is best announced in a trilogy of Supreme Court cases which include *Skidmore v. Swift and Co.*; *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc*; and *United States v. Mead*. 323 U.S. 134, 65 S.Ct. 161 (1944); 467 U.S. 837, 104 S.Ct. 2778 (1984); and 533 U.S. 218, 121 S.Ct. 2164 (2001), respectively. To properly analyze the appropriateness of the judicial deference in this case, all three cases must be discussed because each subsequent case refines the previous cases' announced standard for deference.

1. *Establishing the Deference Standard*

*Skidmore* announced a sliding-scale test for deference to agency decision-making, stating:

> "We consider that the rulings, interpretations and opinions of the Administrator under the Act, while not controlling upon the courts by reason of their authority, do **constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance**. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and

all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift and Co.*, 323 U.S. at 140, 64 S. Ct. 164 (emphasis added).

Next, the Supreme Court, in *Chevron*, announced a two-part test for reviewing agency decision-making.

> "When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions. [1] First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress... [2] [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc* 467 U.S. at 842-843, 104 S.Ct. at 2781-2782.

Finally, *Mead*, further refined the standards for judicial deference. The Supreme Court announced a new test for deference, arguably establishing a middle-ground between *Chevron* and *Skidmore*. The court held that,

> "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."

*United States v. Mead* 533 U.S. at 227, 121 S.Ct at 2171. The court revived *Skidmore*, stating "*Chevron* did nothing to eliminate *Skidmore's* holding that an agency's interpretation may merit some deference whatever its form, given the **'specialized experience and broader investigations and information available to the agency'** 323 U.S. at 139, 65 S.Ct. 161, and given the **value of uniformity** in its administrative and judicial understandings of what a national law requires." *Mead* 533 U.S. at 234, 121 S.Ct at 2175, citing *Skidmore* 323 U.S. at 140, 65 S.Ct. 161 (emphasis added).

*Mead* essentially broke up the first element of *Chevron* into two parts. Prong 1(a) asks whether an agency has the ability to engage in notice-and-comment rulemaking, formal adjudications, or some other indication of comparable congressional intent. *Mead* at 226-227, 2171

If such authority is lacking, or when congress has "explicitly left a gap for an agency to fill," then *Chevron* deference is inapplicable. In Prong 1(b), a court examines whether the agency is acting with the force of law with some express authorization by Congress. If the analyzing court finds no delegation under 1(a) or 1(b), then *Chevron* deference is inapplicable. Next, in the second prong, which revived *Skidmore*, a court is to consider a ruling's "thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight." *Id* at 235, 2176.

### 2. *Deference Under Chevron Appropriate*

Using *Chevron* to analyze the DOL's investigation, under prong 1(a), which looks at Congressional intent, **Congress expressly delegated authority to the DOL** to "elucidate a specific provision of the statute by regulation" in regulating farmers under the AWPA. 29 U.S.C. §1861 ("The Secretary [of Labor or the Secretary's authorized representative] may issue such rules and regulations as are necessary to carry out this chapter..."); *e.g. Chevron U.S.A. Inc. v. National Resources Defense Council, Inc*, 467 U.S. 837, 104 S.Ct. 2778 (1984). Therefore, prong 1(a) is satisfied.

With respect to prong 1(b), which examines agency procedure, adequate procedural protections were in place at the time of the DOL's investigative report. Although the DOL did not conduct a formal adjudication, the court "has sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded." *Mead* at 231; 2173 (citations omitted). Should the Court find the DOL's investigative report to be an informal adjudication, then Defendants submit that the investigative report is entitled to deference as an informal adjudication. "Informal adjudications are authorized generally by Congress through the Administrative Procedure Act ("APA"), and generally carry the force and effect of law." 73 Fordham L. Rev. 1103, 1176, *referencing* 5 U.S.C. 555; *see also Mead* at 241-

241, 2179 (Scalia, A., dissenting) (discussing, under 5 U.S.C. §706 of the APA, that a writ of review for an administrative action "would generally not issue unless [an] executive officer was acting plainly beyond the scope of his authority").

In support of this, there are least two examples of the Supreme Court deferring to an agency's informal adjudication. *See Nations Bank of North Carolina, N.A, et. al. v. Variable Annuity Life Insurance Co. et. al.*, 513 U.S. 251, 115 S.Ct. 810 (1995); *Pension Benefit Guaranty Corp. v. LTV Corp. et al*, 496 U.S. 633, 110 S.Ct. 2668 (1990). The *Mead* court cited *Nations Bank* in support of the proposition that *Chevron* deference may be applicable even absent administrative formality. *Mead* at 231, 2173, citing *Nations Bank* at 256-257, 263. There is nothing in the DOL's report to indicate any procedural defects, that the decision was arbitrary or capricious in substance, or that it was manifestly contrary to the to the AWPA. *See Mead* at 227, 2171.

Congress's express delegation of authority to the DOL was affirmed by the Supreme Court when it stated, "**Congress clearly envisioned**, indeed expressly mandated, **a role for the Department of Labor in administering the [AWPA]** by requiring the Secretary to promulgate *standards* implementing [the] AWPA..." *Adams Fruit Company v. Barrett*, 494 U.S. 638, 650; 110 S.Ct. 1384, 1391 (1990).[6] Recognizing Congress's clear delegation of authority to the DOL, and although no formal adjudication was conducted, Defendants respectfully submit that the DOL's investigative report be afforded *Chevron* deference. *Mead* 231, 2173. Again, the DOL's investigation was thorough and considered all the relevant facts.[7] *See* Exhibit 3.

---

[6] Although this case was overturned by 1995 amendments to the AWPA, *see Deck v. Peter Romein's Sons, Inc.*, 109 F.3d 383, 388 (7th Cir 1997), its statement of Congress's express delegation to the DOL to administer the AWPA is untouched.

[7] As discussed above, to reach it's conclusion, the DOL analyzed Frenchman Valley's prior history of compliance and analyzed, analyzed the applicability of the Family Business Exemption, interviewed the May's, analyzed the AWPA complaints of two redacted individuals who were

Furthermore, the Supreme Court "has long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it was entrusted to administer [footnote omitted]..." *Mead* at 844, 2782. The DOL is entrusted to administer the AWPA, and accordingly, its findings are entitled to deference. *Id*; 29 U.S.C.A. §1861.

Finding judicial deference appropriate under *Chevron*, either finding the DOL's report to be an informal adjudication or otherwise, Defendants respectfully submit that Defendants are entitled to summary judgment as a matter of law because no issue of material fact exists on any of Plaintiffs' AWPA claims because Defendants are exempt from the AWPA. See *United States v. Mead* 533 U.S. 218, 121 S.Ct. 2164 (2001), referencing *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc*, 467 U.S. 837, 104 S.Ct. 2778 (1984); Rule 56 Fed.R.Civ.P.

### 3. Alternatively, the DOL's Report is Entitled to Deference Under *Skidmore*

In the alternative, and without waiving their argument that *Chevron* deference is appropriate, if the Court does not find *Chevron* deference applicable, Defendants respectfully submit that, under prong 2 of the test announced in *Mead*, the Court should defer to the results of the DOL's investigation given the DOL's "specialized experience and broader investigations and information available to the agency...and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead*, 533 U.S. 218, 235, 121 S.Ct. 2164, 2175 (2001) (citing *Skidmore v. Swift and Co*, 323 U.S. at 139). The DOL was thorough in its investigation into Frenchman Valley. *United States v.* Mead, 533 U.S. at 235, 121 S.Ct. at 2176; *Skidmore v. Swift and Co*, 323 U.S. at 140. Its reasoning is logical. *Id.* As discussed, the report clearly describes the basis of its decision. *E.g. Mead* at 235, 2176. There is nothing before Defendants or the court to indicate any inconsistency with earlier and later

---

husband and wife which was taken by the Texas Workforce Commission, and interviewed employees of the Texas Workforce Commission. *See* Exhibit 2.

pronouncements. *Mead*, 533 U.S. at 235, 121 S.Ct. 2175. With respect to other sources of weight: consistency with the spirit of Family Business Exemption and the current fact's seamless fit with the Family Business Exemption's spirit, Defendants respectfully submit that these factors, combined, should persuade the court to defer to the DOL's thoughtfully-reached decision. *E.g. Mead* at 235, 2175. Alternatively, finding judicial deference appropriate under *Skidmore*, Defendants respectfully submit that Defendants are entitled to summary judgment as a matter of law because no issue of material fact exists on any of Plaintiffs' AWPA claims as Defendants are exempt from the AWPA. *See United States v. Mead*, 533 U.S. 218, 121 S.Ct. 2164 (2001), referencing *Skidmore v. Swift and Co.*, 323 U.S. 134, 65 S.Ct. 161 (1944); *see* Rule 56 Fed.R.Civ.P.

## V.

## CONCLUSION

Defendants respectfully maintain that based on the Court's deference to the DOL's investigative report, Defendants are entitled to summary judgment as to Plaintiffs' AWPA claims. In the event that the Court does not defer to the DOL's report, it still is persuasive and **"constitute[s] a body of experience and informed judgment" to which the Court "may properly resort for guidance."** *Skidmore v. Swift and Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 164 (1944) (emphasis added). However, even without deferring to the DOL's investigative report or finding it persuasive, Defendants maintain that they are still entitled to summary judgment as a matter of law on Plaintiffs' AWPA claims based on Tammy May's affidavit.

Again, summarizing, the applicability of the AWPA turns on whether or not the Mays exclusively performed the farm labor contracting activities applicable to their business.[8] *See Malacara v. Garber*, 353 F.3d 393, 399 (5th Cir. 2003); 29 U.S.C. § 1803(a)(1). As Tammy May stated, with the exception of the assistance of the Texas Workforce Commission and the Nebraska

---

[8] See n. 2 *supra*.

Workforce Development Commission, which the Mays utilized as part the Department of Labor's condition for worker certification, either she or Tim May performed all the recruiting, soliciting and hiring of workers.[9] *See* Exhibit 1. Consequently, Frenchman Valley is exempt from the AWPA. Therefore, there is no genuine issue of material fact at issue, and Frenchman Valley is entitled to summary judgment as a matter of law as to Plaintiffs' AWPA claims.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray this Motion for Partial Summary Judgment be in all things granted and Defendants be granted judgment as a matter of law Plaintiffs' AWPA claims against Defendants. Defendants also pray for such other and further relief, both general and special, at law and in equity to which they may show themselves justly entitled.

---

[9] *See Malacara v. Garber*, 353 F.3d 393, 399-400 (5th Cir. 2003) (holding that owner's use of state employment agency to locate prospective farm employees did not render him ineligible for the family business exemption under the AWPA).

Respectfully submitted,

*N. Mark Ralls, w/p NH*
N. Mark Ralls          SBN: 240 46031
State Bar No. 16489200
Federal Bar No. 24392

Harvey Ferguson, Jr.
State Bar No. 06913500
Federal ID No. 8417


**Gonzales Hoblit Ferguson, LLP**
One Riverwalk Place
700 N. St. Mary's Street, Suite 1800
San Antonio, Texas 78250
(210) 224-9991 (Telephone)
(210) 226-1544 (Facsimile)



ATTORNEYS FOR DEFENDANTS FRENCHMAN
VALLEY PRODUCE, INC. AND TAMMY MAY

## CERTIFICATE OF SERVICE

I do hereby certify that on the ___4___ th day of ___May___, 2005, a true and correct copy of the foregoing instrument was forwarded to all counsel of record, as follows:

Nathaniel Norton
Jennifer Smith
Rodolfo D. Sanchez
300 South Texas
Weslaco, TX 78596
*Via Certified Mail/RRR*

_N. Mark Ralls, w/p NH_
N. Mark Ralls