# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Ruben Alvarez-Carillo, Jorge Sauceda, and Juana Hernandez-Vasquez | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. B-04-122 |
| | § | |
| v. | § | |
| | § | |
| Frenchman Valley Produce, Inc. and Tammy May, | § | JURY TRIAL REQUESTED |
| | § | |
| Defendants. | § | |

AFFIDAVIT OF TAMMY MAY

STATE OF ___Nebraska___ §

COUNTY OF ___Chase___ §

Before me, the undersigned notary, on this day personally appeared Tammy May, a person whose identity is known to me. After I administered an oath to her, upon her oath she said:

"My name is Tammy May. I am over twenty-one (21) years of age. I am fully competent and qualified in all respects to make this Affidavit. Unless otherwise noted, the facts stated herein are within my personal knowledge. All facts stated herein are true and correct."

"I am employed by Frenchman Valley Product, Inc. (hereinafter referred to as 'Frenchman Valley'). My title is Secretary and Treasurer. In the course and scope of my employment at Frenchman Valley, I know the following to be true:

1. During the time period of June 1, 2003 to October 11, 2003, either Tim or I did any and all recruiting of potential employees of Frenchman Valley.

2. During the time period of June 1, 2003 to October 11, 2003, either Tim or I did any and all soliciting of potential employees of Frenchman Valley.

3. During the time period of June 1, 2003 to October 11, 2003, Frenchman Valley, at the U. S. Department of Labor's direction, did use the Nebraska Workforce Development Commission and the Texas Workforce Commission to act as an intermediary in connecting Frenchman Valley and potential employees. These

workforce commissions did not charge a fee. They did not purport to represent either Frenchman Valley or any of the potential employees. To my knowledge, they did not provide any worker with assurance of employment. We did not delegate any authority to these employment agencies to hire any employees on our behalf. Any job offered to potential employees was offered by either Tim or me.

4. During the time period of June 1, 2003 to October 11, 2003, either Tim or I did made all hiring decisions for personnel at Frenchman Valley.

5. During the time period of June 1, 2003 to October 11, 2003, either Tim or I made all employment decisions relating to personnel at Frenchman Valley.

6. During the time period of June 1, 2003 to October 11, 2003, either Tim or I furnished all supplies and housing at Frenchman Valley.

7. During the time period of June 1, 2003 to October 11, 2003, neither Tim nor I transported any employees of Frenchman Valley. We did not authorize anyone else to transport any employees. Frenchman Valley has on-cite housing, where the worker's quarters are approximately 25 yards 50 yds. from the location that the workers perform their daily work. T. May

8. During the time period of June 1, 2003 to October 11, 2003, neither Tim nor I delegated to anyone outside the family any authority to recruit, solicit, hire, employ, furnish, or transport, any migrant workers."

"Further affiant sayeth not."

Name, _____
Title _____ Valley Produce

SUBSCRIBED AND SWORN TO BEFORE ME, by the said _____,
on this the _2 7_ day of _April_____, 2005, to certify which witness my hand and seal of office.

GENERAL NOTARY - State of Nebraska
JANETTE B. CARMIN
My Comm. Exp. March 1, 2008

_Janette B Carmin_
Notary Public/State of Texas Nebraska

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

Ruben Alvarez-Carillo, Jorge Sauceda, and §
Juana Hernandez-Vasquez §
§
    Plaintiffs, §
§      CIVIL ACTION NO. B-04-122
    v. §
§
Frenchman Valley Produce, Inc. and §
Tammy May, §      JURY TRIAL REQUESTED
§
    Defendants. §

### AFFIDAVIT OF TAMMY MAY

STATE OF _Nebraska_ §
COUNTY OF _Chase_ §
§

Before me, the undersigned notary, on this day personally appeared Tammy May, a person whose identity is known to me. After I administered an oath to her, upon her oath she said:

"My name is Tammy May. I am over twenty-one (21) years of age. I am fully competent and qualified in all respects to make this Affidavit. Unless otherwise noted, the facts stated herein are within my personal knowledge. All facts stated herein are true and correct.

I am employed by Frenchman Valley Produce, Inc. (hereinafter referred to as "Frenchman Valley"). My title is "Secretary" and "Treasurer." I, together with my husband, Tim May, manage the day-to-day operations of the farm. Tim May is the President of Frenchman Valley. Frenchman Valley is a small, family-run potato farm in Imperial, Nebraska. The farm has been in Tim May's family since approximately 1964. The farm incorporated in approximately 1993.

During the year 2003 we employed 118 people. This is based on the number of W-2's we submitted to the U.S. Internal Revenue Service. We have a regular business practice of keeping "personnel files" on each individual employee. Each employee has his/her own file. At the end of each fiscal year, we box up and store our old records. These old payroll records are kept in a storage facility located approximately three miles from our main office.

Page 2

Our files are maintained alphabetically by employee name. The files contain confidential and private information including: time cards, check stubs, Social Security Numbers, Driver's License Numbers, or other government identification numbers, and any Worker's Compensation Claims, reprimands, and relevant medical records.

Frenchman Valley's pay periods occur every two weeks. Each employee turns in a separate time card weekly, so therefore, there are two time-cards per employee for every pay period during which an employee worked at Frenchman Valley. Among the items contained in the files are each employee's two time cards and one check-stub for each pay period that the employee was employed at Frenchman Valley. Many of the documents in the files are stapled together.

Frenchman Valley has a small office staff. I would do any copying of these personnel files given the small size of our staff and given the sensitive and personal nature of the information contained in the personnel files.

Any information from these files that we copy would have to be copied manually and individually in our copy machine. The task would be burdensome, and any extensive copying would pose a hardship to our firm. Each copy costs Frenchman Valley $.03. The copy machine does not have a document feeder. I estimate that the closest Kinko's or other similar copy center is approximately 200 miles away. I conservatively estimate that a fair market rate for my time would be $35.00 an hour. I estimate that it would take 30 minutes to travel to and from the storage to retrieve the employee files for 2003. To search for the time period of July 14 to October 11, 2003, I would have to cross reference our payroll summaries for that time period with each individual employee that worked during that time. I estimate that this would take a minimum of 8 hours. The amount of time it will take to copy each employee's individual records will depend on how long that employee worked at Frenchman Valley because this affects how many documents would be in each file.

I performed a test on how long it would take to copy and individual employee's records for the period of July 14, 2003 to October 11, 2003. It took 35 minutes and there were 49 pages in the file that I copied. Some employees may not have worked the entire period from July 14, 2003 to October 11, 2003, and in that case, the copying time would be less. Based on the test I performed, assuming it takes 30 minutes to copy an employee's file for the time period of July 14, 2003 to October 11, 2003, for 118 employees, I estimate that it would take a minimum of 3540 minutes or a minimum of 59 hours to copy all of our employee files. After all copying is complete, I estimate that it will take approximately 30 minutes to put the employee files back in storage.

The minimum total time I estimate it will take me to complete the copying of employee personnel files for July 14, 2003 to October 11, 2003 is 68 hours.

At a rate of $35.00 an hour, this would cost $2,380.00 of my time, plus the cost of copying.

2

Page 3

If I were to copy the personnel files for the time period of July 14, 2003 to October 11, 2003, I would be kept from doing my other regular duties in maintaining and running the day-to-day operations of the farm. This would be a great burden to the family-business given how time consuming and costly the task would be. The eight to nine day I spent retrieving, going through, and copying employee files would pose a great hardship to the farm. I would not feel comfortable hiring someone else to do the retrieval and copying because of the confidential and private nature of the employee files."

"Further affiant sayeth not."

_Tammy May_

Name _Tammy May_
Title _Sec/Treas_

**SUBSCRIBED AND SWORN TO BEFORE ME**, by the said _Tammy May_ on this the _2nd_ day of _March_, 2005, to certify which witness my hand and seal of office.



Notary Public, State of _Nebraska_

3

# EXHIBIT 3

Section A. Legal Custodian

I HEREBY ATTEST, That the attached copy or copies of each document listed below is a true copy of a document in the official custody of the Department of Labor.

Copy of WHISARD Compliance Action Report, copies of narrative reports, copies of Employee Personal Interview Statements, copy of H-2A certification, copy of letter, copies of WHISARD Case Summary Reports

| Signature and Official Title | Agency and Office | Date |
|---|---|---|
| Van Rangen Director, Regional Operations | Wage & Hour Division | March 16, 2005 |

B. Authentication Officer

I HEREBY CERTIFY, That Jules Van Rengen _____ who signed the foregoing

attestation, is now and was at the time of signing (title)

Director of Regional Operations _____ and has legal custody of the official

records of the United States Department of Labor therein attested and that full faith and

credit should be given to his/her act as such.

IN WITNESS WHEREOF, I

DARLENE LORMAN, REGIONAL ADMINISTRATOR

duly designated by the Secretary of Labor as Authentication Officer of the

Department of Labor, have here-unto subscribed my name and caused the

seal of the Department of Labor to be affixed this __16th__ day of

MARCH, 2005 _____.

_____
Authentication Officer
Department of Labor

Frenchman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

## MSPA Narrative

Frenchman Valley Produce, Inc.
P.O. Box 879
Imperial, Nebraska 69033
(308) 882-4243

**COVERAGE**
Subject employers, husband and wife, Tim and Tammy May, own and operate a potato packing shed operation which encompasses approximately 32 acres plus they lease approximately 1800 acres that the potatoes are grown on ███████████ During the agricultural season of 2003 and 2004, subject employers solicited ███████ recruited, hired and employed seasonal and migrant agricultural workers. Therefore, by definition, Mr. & Mrs. May are agricultural employers (AGERs) within the meaning of Section 3(2) of the Migrant and Seasonal Agricultural Worker Protection Act as Amended (MSPA).    **EXEMPTION 5**

In addition, subject employers are a housing provider (HP). As of the date of the initial conference (IC) on September 21, 2004, there were approximately 20 people living in the employer provided housing ████████████ The housing was inspected and certified by ███ ████ of Nebraska Workforce Development McCook, NE office ██████████ The employer does not house family groups, only workers ████████ Therefore, by definition, all of the individuals residing in the employer provided housing are migrant workers.

Given that subject employers engaged in four of the six named MSPA activities and they are a HP, MSPA coverage is asserted for the period of time that that encompassed the 2003 agricultural season, beginning July 14, 2003 through the date of the IC. Thus, the investigative period is from 7/14/03 through 9/21/04.

<u>Joint Employment</u>
During the investigative period subject employers did not utilize the services of a farm labor contractor. Hence, there was no joint employment. Subject AGERs are the sole employers.

**EXEMPTION 7(C)**

Frenchman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

**EXEMPTIONS     Persons not subject to MSPA**
**4(a)1   Applicable**
The family business exemption is applicable during the entire investigative period because no one other than Mr. & Mrs. May performed any of the six named MSPA activities. ▇▇▇▇▇▇▇ who is the lead agricultural specialist at the National Office of U.S. Department of Labor, Wage Hour Division, participated in and concurred with this determination.

As part of this compliance action, the MSPA complaint of ▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇ husband and wife, taken by the Texas Workforce Commission and forwarded to the U.S. Department of Labor (US DOL), Wage and Hour Division (WHD), Omaha, Nebraska (NE) Area Office (AO) was investigated. ▇▇▇▇▇▇ and ▇▇▇▇▇ migrated to Nebraska from Texas after speaking to ▇▇▇▇▇▇▇▇▇ who had approached Tim May to request that he hire ▇▇▇▇▇▇▇▇ were interviewed ▇▇▇▇ by ▇▇▇▇▇▇▇▇▇▇▇ who speaks Spanish fluently. This matter was queried in the written statement of AGER, Tim May ▇▇▇▇▇▇▇▇▇▇▇▇▇ taken by WHI ▇▇▇▇▇▇▇. In addition, other employees of the firm were interviewed ▇▇▇▇ and employer's records were reviewed and copied ▇▇▇▇▇▇▇▇▇ as part of the fact finding process pertaining to this complaint.

**EXEMPTION 5**

EXEMPTION 7( ) hman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

Based upon a thorough analysis of all of the relevant facts, the family business exemption is not deemed to be inapplicable due to ████████ referral of ████████ ██ r. May did not request, instruct or delegate to ████████ to solicit or recruit ████████

## EXEMPTION 5

In the 2003, the AGERs participated in the H-2A program and as part of this program they were required to post the job offer nationwide with State Employment Security Agency (SESA). In addition, the AGERs have a standing implicit understanding with the local SESA, the Nebraska Workforce Development office in McCook, NE to refer workers. Per the US DOL WHD Field Operation Handbook (FOH) Chapter 57a8(d), "An employer whose activities are otherwise exempt under section 4(a)(1) does not lose the exemption by using the services of a local SESA office to obtain workers." Therefore, even though in 2003 the AGERs obtained workers from the SESA in Texas ████████ the family business exemption is still deemed to be applicable during the entire investigative period.

## EXEMPTION 5

4(a)(2)      Inapplicable.
Based on an extrapolation from Mr. May's statement ████████ during the 3rd calendar quarter 2003, AGERs exceeded 500 man-days. The math is as follows: 65 workers x 6 days a week x 10 weeks = 6,500 man-days. According to Mr. May, the 3rd quarter is the busiest calendar quarter and therefore that is when they employ the most employees. In 2003, they began operation of potato processing on July 18, 2003.

4(a)(3)(A)    Inapplicable.  AGER is not a common carrier.
4(a)(3)(B)    Inapplicable.  AGER is not a labor organization.
4(a)(3)(C)    Inapplicable.  AGER is not a charitable organization.
4(a)(3)(D)    Inapplicable.  AGER employed agricultural workers for more than 13 weeks.
4(a)(3)(E)    Inapplicable.  AGER is not a custom combine operation.
4(a)(3)(F)    Inapplicable.  AGER is not a poultry operation.
4(a)(3)(G)    Inapplicable.  AGER and workers' principle occupation is agriculture.
4(a)(3)(H)    Inapplicable.  AGER does not grow shade tobacco.
4(a)(3)(I)    Inapplicable.  AGER is not an employee of persons described in A through H.

4(b)      Applicable.
By definition, Mr. & Mrs. May are an AGER, and therefore Title I of the Act does not apply.

## STATUS OF COMPLIANCE
### Complaint Data
This compliance action was set-up as a directed case as part of the national recidivism survey in agriculture during fiscal year 2004. Subsequent to this case file being set up, a MSPA complaint was forwarded to the Omaha AO as discussed above. There was no specific indication as to which MSPA standard was allegedly violated. However, on Form EEO-13 completed by Texas Workforce Development Specialist ████████ item 13 pertaining to allegations of discrimination, an "X" appears next to the words "Reprisal/Retaliation". This allegation of discrimination is unsubstantiated for it did not meet the criteria set forth in Section 505.

## EXEMPTION 7(C)

Frohman Valley Produce, Inc.
Local # 2004 180 04844
WHISARD # 1371926

## EXEMPTION 7(C)

None of the individuals cited in the complaint were employees in 2004 ▮▮▮▮▮▮▮▮  The employer's explanation for the reason these individuals were not hired was due to their poor work history ▮▮▮▮▮▮▮▮ when they had worked for subject enterprise in 2001 and that they were aware of this reason because they had been expressly told so in 2004 ▮▮▮▮▮▮  Mr. May also said that ▮▮▮▮▮▮▮▮ have called in 2002 and maybe 2003 to ask if we'd hire them and Tammy (May) said no."

Given that AGERs are persons not subject to the Act, no determination of compliance was made.

AGERs are housing providers. The housing consists of two buildings, one built in 1984 and the second in 1986. Both were designed and built in accordance with US DOL OSHA specifications. The maximum occupancy for both buildings is 52 people ▮▮▮▮▮▮

The housing was inspected and certified to meet all safety and health standards by ▮▮▮▮ of the Nebraska Workforce Development office in McCook, NE ▮▮▮▮▮▮  On 9/21/04, ▮▮▮▮▮▮ and ▮▮▮▮▮▮ conducted a walk-through housing inspection. No apparent housing or safety violations were observed. In addition, during the housing inspection ▮▮▮▮▮▮ spoke in Spanish to the occupants and none reported any problems or concerns.

### DISPOSITION
On October 8, 2004, a telephonic final conference (FC) was held with AGER, Tim May, and ▮▮▮▮▮▮ notified Mr. May that in the 2003 and 2004 season they were deemed as persons not subject to the Act under the family business exemption. ▮▮▮▮▮▮ explained to Mr. May criteria of this exemption. Mr. May conveyed that even though exempt they were in compliance with the requirements of the law (MSPA) and would continue to do so.

Recommendation ▮▮▮▮▮▮▮▮

**EXEMPTION 5**

▮▮▮▮▮▮▮▮

Lead Investigator
October 26, 2004

**EXEMPTION 7(C)**